IN THE MATTER OF THE PETITION OF G. A. AMUNDSON AND OTHERS FOR THE REPAIRING OF COUNTY DITCH NO. 18, CLAY COUNTY, MINNESOTA.[1]

December 24, 1920.

No. 21,975.

**Drain—authority to repair does not give authority to drain new lands.**
    1. The provision of section 5552, G. S. 1913, requiring the county board to keep public drainage ditches in repair, does not give authority

[1] Reported in 180 N. W. 537.

to substantially deepen several miles of a ditch for the purpose of draining lands not drained by it as originally constructed.

### Same—assessing cost of deepening ditch to drain new lands.

2. The provision of this section, prescribing the manner in which the cost of enlarging a ditch, to enable it to take care of water discharged from subsequently constructed tributary ditches, shall be apportioned between the original ditch and such tributary ditches, and the manner in which the part so apportioned to each shall be assessed against the property assessed for the original construction of the same, does not apply to or govern the making of an assessment for the cost of deepening part of a ditch for the purpose of draining and reclaiming lands not drained by the original ditch, where no tributary ditches have been constructed.

### Same — unbenefited property not to be assessed.

3. Such work is, in all essential respects, the construction of a new ditch, and the cost thereof cannot be assessed against property receiving no benefit from the work.

From an order of the county board of Clay county directing the repair of County Ditch No. 18, G. A. Amundson and other landowners appealed to the district court for that county. The appeal was heard by Johnson, J., who made findings and ordered judgment in favor of appellants. From the order denying respondents' motion for amended findings or for a new trial, the county of Clay and the drainage district known as County Ditch No. 18 appealed. Affirmed.

*Garfield H. Rustad,* County Attorney, and *Christian G. Dosland,* for appellants.

*Charles S. Marden* and *Henry C. Stiening,* for respondents.

TAYLOR, C.

County Ditch No. 18 in the county of Clay was established in 1907. The upper part of the ditch passes through a number of sloughs and a shallow lake, but, as originally constructed, was not as deep as the sloughs or the lake, and did not extend through the lake bed. Some of the landowners seem to have cut trenches through the outer edge of the lake bed, for the purpose of permitting the water from the lake to enter the ditch, but, as the bottom of the ditch was above the bottom

of muck of the lake bed, the lake was drained only to a limited extent.

In July, 1913, five landowners, whose lands had been assessed for the construction of the original ditch, filed a petition with the county auditor, representing that the ditch had become obstructed by grass, weeds and sediment, and that laterals had been constructed which increased the volume of water beyond the capacity of the ditch, and asking that the ditch be repaired and that an engineer be appointed to ascertain what repairs were necessary and the cost of making them. The county board appointed an engineer who made a survey, and, on August 27, 1913, filed his report. This report provided for clearing out and deepening the upper part of the ditch, and for laying tile along parts of it instead of widening it at the surface. After considering this report, the county board had the auditor advertise for bids, and on July 24, 1914, let the contract to do the work specified in the report of the engineer for the sum of $5,033. The contract required the contractors to deepen nearly four miles of the upper part of the ditch from seven-tenths of a foot to five feet below its original depth and to lay 5,200 feet of tile. It was completed in the fall of 1916.

On January 4, 1917, the county board appointed viewers who made and reported an assessment in which they spread the cost of the work over all lands assessed for the construction of the original ditch and in the same proportion in which the original assessment had been apportioned to such lands. Thereafter the county auditor gave notice that a special meeting of the county board would be held on October 22, 1917, to consider the petition for the work and the reports of the engineer and the viewers, and that all landowners affected were invited to appear and be heard at that time. This was the first opportunity for a hearing that had been given. The objectors appeared at this hearing, and each objected to the assessment against his land, on the ground that his land was situated on the lower part of the ditch, and that none of the work had been done on that part of the ditch which drained his land. The fact that the work in no manner facilitated the drainage of these lands is undisputed. But the county board took the position that section 5552, G. S. 1913, required them to spread the cost of the work over all lands originally assessed for the construction of the ditch and in the same proportion in which the original assessment had been spread

over such lands, and for this reason confirmed the assessments as reported by the viewers. The objectors appealed to the district court. The appeals were tried as one case before the court without a jury. The court found, among other things, that about 600 acres of land had been drained and reclaimed by the deepening of the upper part of the ditch; that none of the reclaimed land was owned by the objectors, and that the lands owned by the objectors had not been benefited by the improvement, and directed that the assessments against these lands be canceled. The county appealed from an order denying a motion for amended findings or for a new trial.

The county contends that section 5552, G. S. 1913, authorized the work in question, and required the assessment for the cost to be spread over all lands assessed for the original construction of the ditch and in the same proportion in which the original assessment was spread over such lands. This section was the statute in force when the proceedings in controversy were brought. It is section 26 of chapter 230, p. 327, of the Laws of 1905, as changed and amplified by subsequent amendments, and contains several somewhat disconnected provisions.

The first paragraph provides that the county board of the county, in which any public drainage ditch or any part thereof is located, "shall keep the same, or such part thereof, in proper repair and free from obstruction * * * so as to answer its purpose," and authorizes the board to pay the expense incurred therefor out of the revenue fund, and to reimburse that fund by an assessment upon all property originally assessed for the construction of the ditch. This provision contemplates neither notice nor hearing at any stage of the proceedings, and the authority conferred by it does not extend beyond the making of repairs and the removal of obstructions. Its scope was doubtless thus limited because this court had held, in State v. McGuire, 109 Minn. 88, 122 N. W. 1120, that a ditch could not be widened or deepened without giving those whose property was taken or assessed for the improvement an opportunity to be heard before the proceedings were concluded. As the work in controversy was not confined to repairs and the removal of obstructions, but consisted in substantially deepening nearly four miles of the ditch—some of it as much as five feet—and in laying nearly one mile of tile, no authority for doing it can be found in this provision.

Another paragraph prescribes the manner of making assessments for the repair of state ditches.

Another paragraph provides:

"That if the repair of any county or judicial ditch is made necessary or if it shall be necessary to widen or deepen the same in consequence of the construction of lateral or private ditches or in consequence of the construction of other ditch or ditches which connect with or empty into said original ditch or into a lake or lakes which are drained by such original ditch, and which lateral, private or public ditch or ditches are constructed subsequent to and not included in the assessment for such original ditch, and which increases the volume of water to be taken care of by the original ditch or which deposit sediment in the original ditch and thereby contribute to the necessity of such repair, widening or deepening, then the county board shall appoint three viewers whose qualifications shall be as herein provided and whose duty shall be to first apportion the cost of such repair, widening or deepening, and of the expense in connection therewith equitably between the lands benefited respectively by such original ditch and those benefited by such private, lateral or other ditches constructed as aforesaid, in proportion to the benefits to such respective ditch systems resulting from the construction of such original ditch and of such lateral, private and subsequent ditch or ditches, the same as if such original ditch and such lateral, private and subsequent ditch or ditches were originally one ditch system, and such viewers shall then equitably apportion and assess the portion of the cost of such repairs and expenses so determined to be borne by such private, lateral or other ditches upon the lands benefited by the original construction of such lateral, private or subsequent ditch or ditches or by branches thereto, in proportion to the benefits to such lands resulting from such construction, and shall likewise apportion and assess the portion of such cost determined to be borne by such original ditch upon the lands benefited by the establishment and construction thereof in proportion to such benefits. The fact that such portion of such cost of repair, widening or deepening, and such expenses respectively apportioned to such lateral and subsequent ditch system or systems, and to such original ditch system is respectively apportioned and assessed against the respective lands benefited thereby, in the same pro-

portion as the respective original assessment of benefits therein, shall in all cases be prima facie evidence that such assessment and apportionment is made in compliance with the provisions and requirements of law." [G. S. 1913, § 5552.]

This provision gives power to widen or deepen a county or judicial ditch in those cases in which the subsequent construction of other ditches which discharge into it, or into waters drained by it, and which were "not included in the assessment for such original ditch," makes such widening or deepening necessary, and directs that the assessments for the cost of the work shall be apportioned between the lands benefited by the original ditch and those benefited by the tributary ditches. It further directs that the part of the cost so apportioned to the lands benefited by the tributary ditches shall be assessed "upon the lands benefited by the original construction of such" tributary ditches "in proportion to the benefits to such lands resulting from such construction;" and that the part so apportioned to the lands benefited by the original ditch shall be assessed "upon the lands benefited by the establishment and construction thereof in proportion to such benefits." It treats the original ditch and the lands benefited by it, and the tributary ditches and the lands benefited by them, as two separate existing systems, which for some purposes are to be combined into one. It provides for apportioning the cost of the new or additional work between the two systems, and then for spreading the part of the cost apportioned to each system over the lands benefited by the original construction of that system in the same manner and in the same proportion in which the original cost of constructing that system was spread over such lands.

This is the provision on which the county places its main reliance, but the situation for which it provides does not exist in the present case. The allegation in the petition that the subsequent construction of other ditches had increased the volume of water beyond the capacity of the original ditch seems to have been wholly unfounded, and no claim was made at the trial that any ditch had ever been constructed which discharged into this ditch or into the lake. It is unquestioned that the ditch was deepened, not for the purpose of taking care of the discharge from tributary ditches, but solely for the purpose of draining additional lands not drained by the original ditch. Such work does not come

within the operation of the provision quoted, unless brought within it by the final paragraph of the section which reads:

"The repairs herein provided for shall be construed to include the taking from said ditch of sediment deposited therein, the removal of obstructions therein, the widening and deepening thereof so as to answer its original purpose or so as to provide for additional flow of water caused by other ditches or any other reason, the cutting and removal of weeds or grass from the bottom, sides, banks or right of way of such ditch and such other changes or alteration therein as will enhance its usefulness for the purpose of drainage, and shall further be construed to include the extension of said ditch to a new outlet when and in case the same is found by the county board to be necessary or advisable." [G. S. 1913, § 5552.]

Taken in connection with the preceding parts of the section, the provision that the repairs provided for shall be construed to include such changes or alterations in the ditch "as will enhance its usefulness for the purpose of drainage" cannot be given the effect of authorizing the construction of what is essentially a new ditch under the guise of repairing an old one. No claim is made that the work in controversy was a part of the original project, nor that the lands benefited by it were assessed for such benefits in the original assessment. This new work reclaimed some 600 acres of land not reclaimed by the original ditch. The objectors own no part of the reclaimed land, and the work that reclaimed it conferred no benefit to the land which they do own. The law required the assessment for the original ditch to be apportioned according to the benefits resulting from the drainage afforded by the original ditch, and the assessment is presumed to have been so apportioned. To require the objectors to pay a similar proportion of the cost of the new work would compel them to pay for something which they did not receive, and would give the owners of the reclaimed land something for which they did not pay. If the provisions cited were to be construed as having this effect, they could not be sustained. County of Lyon v. Lien, 105 Minn. 55, 116 N. W. 1017; Gourd v. County of Morrison, 118 Minn. 294, 136 N. W. 874.

The present assessment is not for the cost of repairing the old ditch,

nor for the cost of enlarging the old ditch to enable it to take care of water from a tributary ditch, but is for the cost of constructing what is essentially a new ditch. State v. McGuire, 109 Minn. 88, 122 N. W. 1120. The cost of such work cannot be assessed against lands not benefited by the work. Section 5564, G. S. 1913. It is conceded that the amendment to section 5552, G. S. 1913, made by section 6 of chapter 300, p. 434, of the Laws of 1915, does not apply to the present case, but, if it did, it clearly could not be construed as authorizing such an assessment as was here attempted. No land can be assessed for benefits it does not receive, and a statute which necessarily brought about that result could not stand. Of course the legislature may provide for combining two or more existing ditches or drainage systems into a single system, and for extending or enlarging a single ditch or drainage system, and may provide for assessing the cost of such work to the benefited property in such manner as it deems proper, so long as it does not overstep the limitations imposed by the Constitution. But no provision, other than the provision for apportioning and assessing the cost of a new ditch, seems to have been made for apportioning and assessing the cost of such work as that here involved. The cost of this work may doubtless be assessed against the property benefited by it, but we agree with the learned trial court that the assessment against the lands of the three objectors cannot be sustained, as such lands received no benefit from this improvement.

Order affirmed.