# IN RE PETITION FOR REPAIR OF COUNTY DITCH NO. 1, FARIBAULT COUNTY.
## WILLIAM F. SEIDLITZ v. COUNTY OF FARIBAULT.[1]

August 1, 1952.

No. 35,617.

[1]Reported in 55 N. W. (2d) 308.

*Morse & Frundt* and *Seifert, Krahmer & Johnson,* for appellant.
*Putnam & Spencer* and *Smith, McLean & Peterson,* for respondent.
*Harold R. Pfeiffer, Johanson, Winter & Lundquist, L. J. Lauerman,* and *Erickson & Zierke* filed briefs as *amici curiae* in support of the petition for reargument.

*Somsen & Somsen,* by *Henry N. Somsen, Jr.,* and *W. H. Dempsey* filed a brief as *amici curiae* in opposition to the petition for reargument.

UPON PETITION FOR REHEARING.

KNUTSON, JUSTICE.

Because of the public interest in our rural communities in the issues involved in this case, we granted leave to several *amici curiae* to file briefs in support of a petition for rehearing subsequent to the filing of our opinion in this case. We also granted leave to other *amici curiae* to file briefs in opposition to such rehearing. The briefs filed have been quite helpful in pointing out possible room for misconstruction of our opinion. We do not believe a rehearing is necessary. There may be room, however, for clarification of what we intended to say; and, for that reason, the following opinion is filed in lieu of the opinion of May 2, 1952, in order that there may be

no doubt as to what is our construction of the drainage laws involved.

The appellant and his wife are joint owners of the NE¼ of section 14, township 103 (Clark township), range 24, Faribault county, Minnesota. He comes here on appeal from an order of the district court for that county denying his alternative motion for judgment or a new trial in a proceeding under M. S. A. 106.471 for the repair of county ditch No. 1 and its Thesius branch. In the repair proceeding he was assessed for benefits to his land.

On the east 80 of appellant's farm there is a slough from which all of the surface water flows away naturally, except about 1½ feet in the bottom, which remains to be evaporated. This 1½ feet of water covers about ten acres. The water from this slough, above the 1½-foot level, flows naturally to the south in a shallow ravine or well-defined course for surface water, sometimes referred to in the record as a "swale." On the farm to the south of appellant's place, this ravine turns to the west and crosses two more farms, ultimately reaching what used to be known as Thesius Creek, now known as the Thesius branch of county ditch No. 1. There was also a much smaller slough or depression on appellant's west 80 acres, which he had drained with tile extending to his west boundary. At this point, appellant's tile joined a tile ditch of his western neighbor (Brandt, W½ of section 14 north of the railroad). The water from the tile flowed into the shallow ravine, above referred to, which carries the water to the Thesius branch.

In the proceeding now before us, for the repair of county ditch No. 1 and its branch, the viewers assessed appellant's land for benefits. Their report was confirmed by the board of county commissioners. An appeal was taken to the district court, as provided by §§ 106.471, subd. 7(d), and 106.631. The jury in the district court found appellant's land benefited to the extent of $408, and the trial court denied his motion for judgment or a new trial, as above stated.

■ Proceedings to establish drainage systems or for their repair are a matter of statute. M. S. A. c. 106, provides for five types of ditch proceedings. Each is a distinct proceeding commenced by peti-

tion and carried on with due regard for constitutional due process: (1) The original proceeding (§ 106.031, *et seq.*) for establishment of a drainage system, either by way of a county ditch, or by a judicial ditch where more than one county is involved; (2) a proceeding (§ 106.471) to repair an established drainage system, which is the proceeding involved in the case at bar; (3) a proceeding (§ 106.501) for the improvement of an existing system; (4) a proceeding (§ 106.511) to improve an outlet for an established ditch; and (5) a proceeding (§§ 106.521 and 106.531) to establish laterals to drainage systems already established under (1).

Appellant contends that his land was in no way benefited by the establishment of county ditch No. 1 or its Thesius branch; that the surface water from his land flowed away from it as freely before the county ditch or its branch was dug as it did afterward; and that, in consequence, his property was beyond the purview of the statute and was not eligible for assessment in repair proceedings. Whether he is right in the contention that his land has not been benefited by the establishment of the original drainage system is the first question presented.

In determining whether an assessment for benefits in a drainage proceeding may be sustained, certain legal principles must be observed. Before there can be an assessment, there must be some benefit to the land involved. Conversely, where there is no benefit there can be no assessment; otherwise the proceedings run afoul of the constitutional proscription against the taking of property without due process of law.

In Myles Salt Co. Ltd. v. Bd. of Commissioners, 239 U. S. 478, 485, 36 S. Ct. 204, 206, 60 L. ed. 392, 396, the United States Supreme Court held that an assessment in such case is a violation of due process, saying:

"It is to be remembered that a drainage district has the special purpose of the improvement of particular property and when it is so formed to include property which is not and cannot be benefited directly or indirectly, including it only that it may pay for the benefit to other property, there is an abuse of power and an act of con-

fiscation. [Citing case.] We are not dealing with motives alone but as well with their resultant action; we are not dealing with disputable grounds of discretion or disputable degrees of benefit, but with an exercise of power determined by considerations not of the improvement of plaintiff's property but solely of the improvement of the property of others—power, therefore, arbitrarily exerted, imposing a burden without a compensating advantage of any kind."

In In re Bonds of Drainage Dist. No. 4, 22 Ariz. 31, 39, 193 P. 833, 835 (reversed on rehearing on other grounds, 22 Ariz. 48, 205 P. 806), that court said:

"* * * there can be but little doubt that an assessment upon property which is not benefited is void."

In Nampa & Meridian Irrigation Dist. v. Petrie, 37 Idaho 45, 54, 223 P. 531, 533, that court said:

"* * * It is well settled that an assessment cannot be based upon speculative, future benefits, but must be based upon a present benefit, immediately accruing or demonstrably certain to accrue from the construction of the work."

Also, see, Note, 14 L. R. A. 755; for a discussion, see 48 Am. Jur., Special or Local Assessments, § 118. In accord, see In re Assessment for Paving Concord Street, 148 Minn. 329, 331, 181 N. W. 859, in which we said:

"* * * But it is not to be overlooked that charging private property with a lien for public improvements is a taking for public use, and that, if property not benefited is assessed, or if an assessment is greatly in excess of benefits, the taking is without just compensation and is unconstitutional."

■ Whether land involved in a drainage proceeding has been benefited is a question of fact. As in the case of any other question of fact, there must be competent evidence to sustain a finding that there are benefits. On appeal, we review the evidence to determine if there is sufficient evidence to sustain the finding the same as we

do in any other case. Where the evidence is conclusive against the finding, it cannot stand.

Respondent and *amici curiae* appearing in support of respondent's position contend, among other things, that land lying within the drainage basin of a ditch may be assessed without showing more. On the other hand, appellant contends that no land not adjacent to the ditch may be assessed unless it is connected by construction of a lateral or laterals. We cannot fully agree with either contention. When our drainage laws were amended by L. 1947, c. 143, provision was made by § 47 thereof (M. S. A. 106.471, subd. 7) for the assessment of lands benefited by the ditch and omitted from the original proceedings.

■ In a proceeding for repair, under § 106.471, the principal objective is to clean out and restore the drainage system to its *original condition*. Subd. 1(a) of that section defines the word "repair" as meaning "restoring a ditch system or any part thereof as nearly as practicable to the same condition as when originally constructed * * *." Incidental to that is a provision in subd. 7(a) for the assessment of lands not included or assessed in the original proceedings if such lands "have been drained into such drainage system, or have otherwise benefited by reason thereof, * * *." This characterization of the lands to be assessed is clarified by the further provision that on the hearing on the viewers' report, provided for in subd. 7(c), the county board "shall find and determine the benefits to all lands, * * * *benefited by the original construction of the ditch system and not assessed for benefits therefor.*" (Italics supplied.)

The phrase in subd. 7(a) "have been drained into such drainage system, or have otherwise benefited by reason thereof," read in the light of subd. 7(c), was quite obviously incorporated into the drainage law for the purpose of subjecting to assessment in the repair proceedings only those lands which should have been included in the original proceeding and assessed therein for benefits, but which were omitted by oversight or miscalculation. The language must be interpreted to mean that the land not assessed must have

been benefited in such fashion as would have justified an assessment in the original proceeding by being drained into the system. It follows necessarily that if it could not have been assessed in the original proceedings, because not benefited, it cannot be assessed under the proceedings for repair. It does not fall within the scope of the statute under which the repair proceedings are authorized and conducted. Subd. 7(c), quoted above, so interprets the language in defining the duties of the county board in passing on the viewers' report at the hearing thereon.

■ It is obvious that before there can be an assessment against land from which water drains into the ditch there must be a beneficial drainage. All surface water sooner or later finds its way into some outlet. One of the main objects of artificial drainage systems is to draw the water off fast enough so that the land may be gainfully put to use. It is entirely possible that some tract or tracts of land within the drainage basin of a ditch are so much higher than other lands that it needs no aid from any artificial drain. In such case, it may not be assessed for benefits accruing to lower land merely because it is in the general drainage basin of the ditch and its water ultimately finds its way into the drainage system. Sheehan v. Flynn, 59 Minn. 436, 61 N. W. 462, 26 L. R. A. 632, is still the law of this state; and, where a landowner, with such aid as he can obtain from the application of the rules announced in that case, may dispose of his surface water as freely before the construction of the drain as after, it is difficult to see how he has sustained any benefit from the construction of the ditch.

It is affirmatively and conclusively shown by the record that prior to the establishment of county ditch No. 1 and its Thesius branch the surface water from appellant's east 80 flowed naturally south through a shallow but well-defined ravine or course for surface water onto the Grau farm (SE¼ of section 14), then west onto the William F. Brandt farm (that part of the W½ of section 14 south of the railroad), and on through the Klingbeil farm (N½ of SE¼ of section 15)—about a mile and a half in all—to Thesius Creek, now the Thesius branch of county ditch No. 1. It so flowed

prior to the construction of county ditch No. 1 and in no greater quantity nor any more freely after the construction than before. Even respondent's engineer admitted that appellant's surface water must have followed this course before county ditch No. 1 was dug. The bottom of the head of the Thesius branch is 15 feet below the slough on appellant's farm. Consequently, in a state of nature, surface water flowed freely from appellant's farm across his neighbors' farms in the shallow ravine and ultimately to the Thesius channel. Not only did appellant and his witnesses so testify, but the three viewers admitted that the surface water must have so flowed.

On the other hand, appellant and *amici curiae* appearing in support of his position contend that where a tract of land is not physically connected to a ditch, either directly or by laterals, it does not receive any benefits and may not be assessed. We cannot agree with that contention either. In much of our comparatively flat agricultural area, surface water forms its own barrier. By drawing off water on lower levels, it is made possible for water on upper land to flow more readily and escape faster, and such drainage constitutes a benefit to the land. Where the evidence sufficiently establishes as a fact, to be tested here as any other fact, that the drain has enabled the water on an upper tract to escape faster after construction of the drainage system, by drawing off the water on lower levels, an assessment is permissible; and if it can be shown that a tract of land has been so benefited it may be assessed in a repair proceeding, even though it was omitted in the original proceeding.

Respondent contends that appellant's land has been benefited by an enhancement in value which arises from the fact that the Thesius branch will furnish an outlet for the 1½ feet of surface water remaining in his slough, which may be drained from his farm by a lateral. It is contended that the lateral may be established by appellant and his neighbors under §§ 106.521 and 106.531 and that, since the natural course for such a lateral would be from appellant's farm to the Thesius branch, appellant's farm is subject to assess-

ment in the repair proceeding. We quote from respondent's brief (p. 14):

"* * * Ditch No. 1 has here provided a channel into which they may legally and without question find outlet for the drainage of their lands."

We do not so construe M. S. A. c. 106. As stated earlier in this opinion, that chapter provides for five distinct proceedings, each started by petition and each complete in itself and complying fully with due process. A complete proceeding is provided for the improvement of an outlet into an established ditch and another for the establishment of laterals into such ditches with power to assess benefited land. No such proceeding is authorized under a petition for repair.

Respondent cites from other jurisdictions several decisions[2] which state that lands may be assessed for benefits resulting from the availability of an outlet for drainage by the future construction of connecting drains. Apparently in the states from which these cases are cited there are no statutes similar to §§ 106.521 and 106.531; and even those cases recognize that there must be *benefits* from such outlets, and that the outlets must be *available*. In the instant case, there is no showing of either benefits or availability.

We conclude that appellant's land was not benefited by the original drainage system; that it did not fall within the purview of the repair proceedings for assessment; and that the legislature intended that benefit of a possible future outlet for a lateral, such as is suggested here, should be left to appropriate proceedings for which it has specifically provided.

The order appealed from is reversed and the case remanded to the district court with instructions to enter judgment for appellant.

---

[2]Lipes v. Hand, 104 Ind. 503, 1 N. E. 871, 4 N. E. 160; County of Dodge v. Acom, 61 Neb. 376, 85 N. W. 292, affirmed, 72 Neb. 71, 100 N. W. 136; Erickson v. Cass County, 11 N. D. 494, 92 N. W. 841; Zinser v. Bd. of Supervisors, 137 Iowa 660, 114 N. W. 51; In re Yankton-Clay County Drainage Ditch, 31 S. D. 496, 141 N. W. 393 (statute provided for assessment for outlets for future connecting drains).

Our opinion of May 2, 1952, is hereby withdrawn.

LORING, CHIEF JUSTICE (concurring specially).

I fully agree with all that Mr. Justice Knutson has said in his opinion, including the statement that surface water itself may, under certain circumstances, constitute an obstruction to drainage, but, since no such problem was presented in the case at bar, I recognize it as *obiter dicta* and, therefore, said nothing about it in the original opinion.

### ON APPEAL FROM CLERK'S TAXATION OF COSTS.

On June 6, 1952, following the original opinion herein, the following opinion was filed:

PER CURIAM.

Respondent has appealed from the clerk's taxation of costs in this court, asserting that the county was acting under the sovereign powers delegated to it by the legislature.

It is our opinion that the clerk properly taxed costs against the county because costs and expenses of the repair proceedings are payable from the fund of county ditch No. 1 under M. S. A. 106.471, subd. 8, not from the general funds of the county supported by the general taxpayers. Subd. 8 reads as follows:

"All fees and costs incurred for proceedings relating to the repair of any drainage system, including inspections, engineering, viewing, publications, or any other proper proceeding shall be deemed a cost of repair and assessed against the land benefited and against corporations and municipalities as herein provided."

The ditch fund of county ditch No. 1 is supported by assessment of the lands benefited by the ditch. Saxhaug v. County of Jackson, 215 Minn. 490, 10 N. W. (2d) 722.

The cases cited by respondent are not in point.

The clerk's taxation of costs is affirmed.