# IN RE PETITION OF JULIUS HOEPNER AND OTHERS FOR IMPROVEMENT OF COUNTY DITCH NO. 1, YELLOW MEDICINE COUNTY.
## OLINE BOECK v. COUNTY OF YELLOW MEDICINE.[1]

January 8, 1954.

No. 36,124.

*Morten & Foreman,* for appellant.
*Lauerman, Johnson & Gustafson,* for respondent.

CHRISTIANSON, JUSTICE.

Proceedings were duly instituted by petition under M. S. A. 106.501 for the improvement of Yellow Medicine county ditch No. 1 in June 1951. The viewers in their report of benefits and damages accruing to lands affected by the proposed improvement assessed

---

[1]Reported in 62 N. W. (2d) 80.

respondent's land for benefits. The county board confirmed the viewers' report and ordered the improvement to be made, the improved ditch to be designated as Yellow Medicine county ditch No. 1-B. From this order and confirmation of the county board, respondent appealed to the district court for Yellow Medicine county. A jury trial was had, and the jury returned a verdict for respondent to the effect that no benefits would accrue to respondent's land by reason of the establishment of Yellow Medicine county ditch No. 1-B. Thereafter appellant, the county, made a motion for a new trial which was denied, and it appeals from the order of the district court denying its motion.

Yellow Medicine county ditch No. 1, which was established in 1906, is an open bull ditch approximately seven miles in length. Its outlet is Boiling Springs Creek, a natural watercourse. The proposed improvement of county ditch No. 1 involves, at least in part, a widening and deepening of Boiling Springs Creek at the point of this outlet for a total distance of about three miles. The effect of the improvement and the resulting establishment of county ditch No. 1-B will be to convert a part of an existing natural waterway into a public drainage ditch and outlet. Respondent's land is situated to the west of Boiling Springs Creek in the same area where the creek is to be made a part of the public drainage system. At its closest point respondent's land is about 1,000 feet west of the creek, being separated from it by land owned by one Caroline Gunderson. The report of the viewers, as adopted by the county board, included a finding that benefits would accrue, by reason of the proposed improvement, to three 40-acre tracts owned by respondent; namely, the SE 1/4, the SW 1/4, and the NE 1/4 of the NW 1/4 of section 26 of Sioux Agency township in Yellow Medicine county. None of these lands was assessed for benefits at the time of the original establishment of county ditch No. 1.

There is evidence of the existence of a large wet spot or slough approximately two-thirds of which is located on respondent's southeast forty and one-third on the Gunderson land. Although the size of this large wet spot or slough was not definitely estab-

lished, there is evidence that it covers an area of about 39 acres when filled with water. Three much smaller wet spots are located on respondent's northeast and southwest forties. The water in these three smaller wet spots, none of which is over one acre in area, is drained into the large wet spot or slough by a system of small bull drainage ditches. These private ditches, which were built by respondent, are situated entirely on her land. The water in the large wet spot or slough is in turn drained through a private open ditch across the Gunderson land outletting into Boiling Springs Creek at a point where county ditch No. 1-B is to be superimposed on the creek. There is no evidence of the existence of any natural drainage channel from respondent's land to the creek. This large slough or wet spot was first drained into Boiling Springs Creek in 1948 or 1949 by means of a surface-type dynamited ditch constructed by respondent. Then in September 1951 respondent constructed a new and larger open ditch, which is the present route for drainage from the large slough or wet spot into Boiling Springs Creek. This new drainage ditch, which for the most part follows the course of the dynamited ditch, is located exclusively on the Gunderson land. Respondent has no easement or written permission to maintain a private ditch on the Gunderson land, but she does have the oral permission to use the land for a drainage ditch.

■ The first issue to be considered is whether the evidence reasonably supports the jury's finding that no benefits would accrue to respondent by reason of the establishment of county ditch No. 1-B. Appellant contends in the first instance that, since county ditch No. 1-B will be the outlet for water flowing off respondent's land, it necessarily follows as a matter of law that her land will be benefited by the improvement.

It is a well-established principle in this state that a necessary prerequisite to the assessment of land for benefits in a public drainage proceeding is a showing that the land will actually receive benefits from the proposed drainage project.[2] This rule is well stated

---

[2]See, *e.g.*, Gourd v. County of Morrison, 118 Minn. 294, 136 N. W. 874; In re Repair of County Ditch No. 18, Clay County, 147 Minn. 422, 180 N. W. 537; Township of Normania v. County of Yellow Medicine; 205 Minn. 451, 286 N. W. 881; 6 Dunnell, Dig. (3 ed.) § 2840a.

in this court's recent opinion in In re Petition for Repair of Co. Ditch No. 1, Faribault Co. 237 Minn. 358, 361, 55 N. W. (2d) 308, 311, where we said:

"In determining whether an assessment for benefits in a drainage proceeding may be sustained, certain legal principles must be observed. Before there can be an assessment, there must be some benefit to the land involved. Conversely, where there is no benefit there can be no assessment; otherwise the proceedings run afoul of the constitutional proscription against the taking of property without due process of law."

The evidence in the instant case shows that respondent since 1948 or 1949 has used Boiling Springs Creek as an outlet for drainage of water from her land. This is clearly permissible under the rule announced in Sheehan v. Flynn, 59 Minn. 436, 61 N. W. 462, 26 L. R. A. 632, that a landowner has the right to drain, by natural or artificial means, the surface water off of his land onto the land of another as long as it is done in a reasonable manner so as not to unnecessarily injure his neighbor's land. Appellant does not dispute this rule nor does it contend that respondent was not entitled to use the creek in its natural condition as an outlet for drainage. Thus the initial question presented by appellant is whether a landowner as a matter of law receives assessable drainage benefits in a drainage improvement proceeding under § 106.501 solely by reason of the fact that the surface water on his land is drained into the public ditch involved even though he had a right to use, in its natural condition, the outlet which is to be the public ditch and even though there is no showing that the public ditch offers a better outlet.

In our opinion, our decision in In re Petition for Repair of Co. Ditch No. 1, Faribault Co. *supra,* is controlling on this question. In that case the land assessed for benefits in a repair proceeding pursuant to § 106.471 contained two sloughs from which water flowed naturally to the south in a shallow ravine or well-defined course for surface water, ultimately reaching the Thesius branch of county ditch No. 1 which was formerly Thesius Creek. Because

of the particular statutory provisions involved, only those lands which could have been assessed for benefits in the original proceeding establishing Thesius branch of county ditch No. 1 were subject to assessment in the repair proceedings. Applying the rule stated therein that whether land involved in a drainage proceeding has been benefited is a question of fact, we held that the evidence was insufficient to sustain a jury's finding of benefits, notwithstanding the fact that Thesius branch of county ditch No. 1 was the outlet for drainage of the land being assessed. In so holding, we said (237 Minn. 364, 55 N. W. [2d] 312):

"* * * and, where a landowner, with such aid as he can obtain from the application of the rules announced in that case [Sheehan v. Flynn, *supra*], may dispose of his surface water as freely before the construction of the drain as after, it is difficult to see how he has sustained any benefit from the construction of the ditch."

Appellant attempts to distinguish In re Petition for Repair of Co. Ditch No. 1, Faribault Co. *supra,* on the grounds, first, that it involved repair proceedings rather than improvement proceedings such as are involved in the instant case; and, secondly, that the statutory authorization to assess benefits in a repair proceeding is limited to those lands which should have been included in the original proceeding establishing the ditch, whereas an improvement proceeding has no such limitation. Although admittedly repair and improvement proceedings are two distinctly different statutory proceedings with different ends and procedures, we have nevertheless found nothing to indicate that the general criteria of determining assessable benefits should be any different in the two proceedings. In both, it is a question of fact whether the land involved will sustain drainage benefits. Further, the fact that in a repair proceeding only those lands benefited by the original establishment of the public ditch may be assessed, if anything, makes the ascertainment of benefits in such proceedings more analogous to the situation presented in the instant case where the sole question is one of additional outlet benefits.

Aside from its contention that as a matter of law respondent received outlet benefits by the establishment of county ditch No. 1-B, appellant asserts that the jury's finding of no outlet benefits is not justified by the evidence. We have thoroughly reviewed the record of testimony before the trial court and are satisfied that the verdict of the jury is reasonably supported by the evidence. Several witnesses expressed the opinion that Boiling Springs Creek is adequate in its natural condition to hold all the drainage from respondent's land and further that respondent's land will receive no benefits from the widening and deepening of the creek. There was considerable testimony that no water was standing in the sloughs on respondent's land in September 1952. It was also established that during the farm year of 1952 respondent had crops growing on all her land except possibly one-half acre. One of appellant's witnesses testified, on the basis of high water marks, that Boiling Springs Creek is subject to flooding at the point where respondent's private ditch outlets into the creek; but there was testimony by Henry Gunderson, who lives on the Gunderson farm, that he planted corn within 15 to 20 feet of the center of the creek, that in early spring the creek might expand to an area of about 20 feet on each side of the center line but normally not over 12 to 15 feet, that there was no water in the creek at the time of the trial, and that the deepest the water gets in the creek is three to four feet in the spring. The evidence is clear that the present fall from the large slough to the creek is inadequate for tiling but that, if the creek were deepened as proposed, tiling could be used and it would provide, in particular, the advantage of subsurface drainage. However, a civil engineer called by respondent testified that an open ditch, as distinguished from tiling, will adequately drain respondent's land; that the present open ditch can be extended or deepened to give the same subsurface drainage as tiling; and that, in fact, the present open ditch has a greater capacity for drainage than any tile which could be installed. In addition, Frank Boeck, respondent's husband, testified that by deepening and extending the present private open ditch there would be available all the subsurface drainage desired. This account of

the evidence is not intended to be a comprehensive coverage of the testimony, but, in our opinion, it clearly demonstrates that the jury could reasonably have determined that respondent's land would not be benefited by the establishment of county ditch No. 1-B.

■ Appellant assigns as error the omission of the trial court to instruct the jury with respect to certain provisions of the drainage statutes and also that the trial court erred in certain instructions actually given. In the first place, appellant claims that the substance of §§ 106.521 and 106.641 should have been included in the instructions to the jury.[3] Under § 106.151, which is the sole statutory guide for determining benefits in drainage improvement proceedings, lands may be assessed for benefits when the construction of the drainage system "makes an outlet more accessible, or otherwise directly benefits such lands or properties." It is appellant's contention that, since respondent has no easement but only oral permission to cross the Gunderson land with her private ditch which she must do to reach proposed county ditch No. 1-B, the establishment of the public ditch will provide benefits by making an outlet more accessible to respondent. This would be the result, appellant argues, because the presence of a public drainage ditch in the immediate vicinity will permit the construction of a lateral across the Gunderson land,

[3]Section 106.521 provides in part as follows:

"Persons owning property in the vicinity of an existing public drainage system may petition for a lateral or a lateral system connecting such lands with the drainage system. The petition shall be signed by 26 percent of the resident owners of the property or by the owners of 26 percent of the area of the property traversed by such lateral or lateral system. * * * No lateral or lateral system shall be constructed for the drainage of lands not assessed benefits for such existing public drainage system until express authority for the use of the existing system as an outlet for such lateral or lateral system has been granted pursuant to proceedings under Minnesota Statutes, Section 106.531."

Section 106.641 provides:

"* * * any person digging or constructing or causing to be dug or constructed any drain which thereby outlets into any drainage system constructed under the provisions of the laws of this state, without lawful authority, shall be guilty of a misdemeanor."

pursuant to § 106.521, on a petition of 26 percent of the resident owners of the affected property or by the owners of 26 percent of the area of the property traversed by such lateral; whereas, if county ditch No. 1-B were not established, a public drainage ditch could be constructed across the Gunderson land only pursuant to § 106.031, which requires a corresponding 51 percent approval.

A somewhat analogous problem was presented in the case of In re Petition for Repair of Co. Ditch No. 1, Faribault Co. *supra,* where we held in a repair proceeding under § 106.471 that the land there involved could not be said to have benefited just because the existing public ditch will furnish an outlet for a public lateral which may be established in the future. The basis for our holding was that such benefits should not be determined in a repair proceeding but rather should be left to proceedings under § 106.511 for the improvement of an outlet or under §§ 106.521 and 106.531 for the establishment of laterals. While the possible benefit which appellant asserts would accrue to respondent in the instant case would clearly not be a factor in determining benefits in any other drainage proceeding, the conclusion reached in the case of In re Petition for Repair of Co. Ditch No. 1, Faribault Co. *supra,* that any benefits resulting from the availability of an outlet for a yet-to-be-constructed lateral are too speculative and uncertain to be considered, is equally applicable here.

Since respondent presently has an adequate access to the proposed county ditch No. 1-B, any benefit accruing from the fact that the establishment of county ditch No. 1-B may in the future make it easier for respondent to gain access to that outlet would necessarily be predicated first upon a future loss of respondent's right to drain across the Gunderson land and secondly upon the assumption that at least 26 percent but not 51 percent of the affected property owners would favor construction of a public drainage ditch across the Gunderson land. Such highly speculative and uncertain benefits cannot be the basis of an assessment for drainage benefits. This is, in fact, implicitly recognized in the very language of § 106.151, on which appellant relies, when it states that lands may be assessed

14

for benefits when the construction of the drainage system "makes an outlet more accessible, *or otherwise directly benefits such lands or properties.*" (Italics supplied.) Since the provisions of § 106.641 are clearly not applicable to the instant case, it follows that the trial court properly denied the requested instructions.

Appellant also assigns as error the failure of the trial court to instruct the jury as to the substance of § 106.151. However, since appellant did not request such an instruction at the trial and it was not assigned as error in its motion for new trial, the alleged error is not properly before us and will not be considered for the first time on appeal. See, Barthelemy v. Foley Elev. Co. 141 Minn. 423, 170 N. W. 513; Pitzen v. Nord, 174 Minn. 216, 218 N. W. 891; Murray v. Wilson, 227 Minn. 365, 35 N. W. (2d) 521; Rule 51 of Rules of Civil Procedure. We have carefully considered appellant's other assignments of error with respect to the trial court's instructions, and we are of the opinion that the instructions, when read as a whole, fairly and accurately presented the applicable principles of law to the jury.

It follows that the order appealed from should be affirmed.

Affirmed.

Mr. Justice Knutson took no part in the consideration or decision of this case.