# IN RE PETITION OF EMIL FRANK AND OTHERS FOR COUNTY DITCH NO. 116.
## EDGAR GEE v. COUNTY OF RENVILLE.[1]

May 14, 1954.

No. 36,168.

*Lauerman, Johnson & Gustafson,* for appellant.

*Curtis H. Berg,* for respondent.

[1]Reported in 64 N. W. (2d) 750.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order of the district court denying appellant's motion for an order vacating the verdict of the jury and granting a new trial.

Appellant is the owner of a 200-acre improved farm in Renville county, Minnesota. He acquired the farm in November 1947 and moved onto it at that time. He became affected by the establishment of Renville County Ditch No. 116 and appealed to the district court from the order of the county commissioners of Renville county filed September 22, 1952. That order approved the report of the viewers in the ditch proceeding and fixed the benefits and damages on account of the establishment and construction of the ditch. The grounds upon which the appeal to the district court was taken were that the benefits fixed and determined by the viewers and approved by the county board were excessive, unreasonable, and materially in excess of the actual benefits to the land by reason of the establishment of the ditch and that the amount awarded appellant for damages was grossly inadequate to fairly compensate him for his actual damages by reason of the establishment and construction of the ditch.

Appellant's land is described as follows: NW ¼ of SW¼ of Section 33, Township 116, Range 37, referred to herein as tract No. 1; NE ¼ of SE ¼ of Section 32, Township 116, Range 37, referred to herein as tract No. 2; NW ¼ of SE ¼ of Section 32, Township 116, Range 37, referred to herein as tract No. 3; NE ¼ of SW ¼ of Section 32, Township 116, Range 37, referred to herein as tract No. 4; and SE ¼ of SW ¼ of Section 32, Township 116, Range 37, referred to herein as tract No. 5.

The principal question for our consideration is whether the assessments made by the jury, although differing to some extent from those made by the viewers, are greater than the amount of the benefits as shown by the weight of the evidence.

In tract No. 1 the viewers assessed the benefits at $320, and the jury reduced them on appeal to $185. Appellant claims that he received no benefits from the proposed ditch on this tract. In tract

No. 2 the viewers assessed the benefits at $620, which was reduced to $420 by the jury. They assessed the damages at $165, while the jury raised them on this tract to $315. Appellant claims that he received no such benefits and that the damages allowed were grossly inadequate. On tract No. 3 the viewers assessed his benefits at $400, and the jury increased them to $500. On tract No. 4 the viewers assessed the benefits at $1,400, while the jury assessed them at $1,500. On tract No. 5 the viewers and the jury both placed the benefits at $340. The jury assessed the total benefits on the five tracts at $2,945 and placed the damages on tract No. 2 at $315.

In reviewing this matter we are confronted with the rule that, where witnesses differ widely in the appraisal of benefits or damages and the evidence is conflicting, the weight to be given to the testimony of the different witnesses is for the jury. Upon appeal, this court must accept those conclusions unless it appears that the jury gave undue weight or drew improper conclusions from the testimony. We must review the evidence to determine whether it is' sufficient to sustain the findings. Where the evidence is conclusive against the findings, they cannot stand. In re Petition for Repair of County Ditch No. 1, Faribault Co. 237 Minn. 358, 55 N. W. (2d) 308; In re County Ditch No. 67, Murray Co. 151 Minn. 292, 186 N. W. 711. The principle is well established in this state, in connection with the assessment of lands for benefits in a public drainage proceeding, that as a necessary prerequisite there must be a showing that the land actually will be benefited by the drainage project proposed. In determining whether an assessment for benefits may be sustained we must observe certain legal principles, namely, that before there can be an assessment there must be some benefit to the land involved. On the other hand, if there are no benefits, there can be no assessment. In re Petition for Improvement of County Ditch No. 1, Yellow Medicine Co. 241 Minn. 6, 62 N. W. (2d) 80; In re Petition for Repair of County Ditch No. 1, Faribault Co. 237 Minn. 358, 55 N. W. (2d) 308.

It is appellant's position that a 200-acre farm such as his, which produced an average annual income of $12,500 for five successive

years, cannot be benefited to the extent of almost $3,000 by any drainage system when he claims that he lost only three or four acres of crop on this land in two out of five years. He further claims that he is damaged substantially and materially by construction of a 33- to 40-foot ditch across the land on which his buildings are located on tracts Nos. 1 and 2.

With respect to tract No. 1, the record discloses that appellant had installed a tile which ran from a low spot on his land northward into a slough and road ditch. This slough is located on a tract of land owned by Ray S. Johnson. The record discloses that the proposed ditch, before crossing appellant's land, will go through the Johnson slough. There is testimony that this will reduce the water level in that slough and provide a better outlet for the tile coming from appellant's tract No. 1. According to that testimony, it would necessitate less maintenance on the outlet and also result in the water moving more rapidly from that tract. There is further testimony to the effect that the water in the end of the tile running north from tract No. 1 may freeze up and not open again until late in the spring and that, as a result, it might also damage the tile. In the opinion of the viewers the better outlet benefited tract No. 1 in the amount of $320. The jury reduced this amount to $185. We cannot say, in view of the testimony of three of the witnesses for the county as to the outlet, that $185 is an excessive amount. It is therefore our opinion that the verdict of the jury in respect to tract No. 1 should stand.

In regard to tract No. 2, it appears from the record that there is a natural watercourse from the north to the south line traversing that 40-acre tract and that the land from the east and the west slopes toward it. The surveyor for appellant measured this watercourse at 20 to 24 feet in width, including a strip of grass land on each side. It further appears that the average depth of this watercourse is two feet. Appellant testified that there is a culvert crossing, which has been there since he has owned the property. However, both of the viewers testified that, at the time they made their assessment in May 1952, they did not see the crossing. The record further

discloses that the proposed ditch will follow the natural watercourse or so-called present ditch. The proposed ditch is to have a uniform bottom width of four feet, while the width of the top will range from 33 to 40 feet. The depth of the present ditch will be increased so that as it crosses the north line it will be 11¾ feet deep and as it crosses the south line it will be ten feet deep. The excavated material from the ditch will be piled within two feet of the banks of the ditch on each side. E. L. Chamberlain, the duly appointed engineer for Renville County Ditch No. 116, stated that the spread dirt takes up two and one-half times the top width of the ditch so that where the ditch is 40 feet wide the dirt would take up 100 feet— 50 feet on each side. These so-called banks will have a "6 to 1 slope," and the highest elevation of this excavated material would be four feet above the present natural level of the ground. However, where water gathers, there will be openings left for the water to get into the ditch.

The viewers testified that they found that four acres of land on tract No. 2 would be benefited, and they assessed the tract $220. They further assessed it another $200 for a joint crossing to be put on the north line of that 40 acres. The testimony then is that they allowed appellant $165 damages by reason of the fact that 1.1 acres will be taken because of the widening of the ditch. It therefore appears that they allowed no damages for the banks that would result from the piling up of the excavated material. Neither does it appear that they allowed any damages for the loss of the culvert, which they claim they did not see when they viewed the property for the making of the assessment, or for the farming inconvenience to appellant in being compelled to go to his north line to cross the ditch when he apparently already had an adequate culvert for crossing considerably closer to his buildings. It is also difficult to understand why appellant, under those circumstances, was assessed an additional $200 for the joint crossing.

The only evidence in the record with reference to the value of appellant's land is that it is worth from $200 to $250 an acre. Therefore, the smallest amount that the jury could have considered

for the loss of the 1.1 acre for the widening of the ditch would be $220. The jury, however, did increase the damages to $315. It therefore appears that the jury must have allowed only $95 for the depth of the ditch being increased eight to ten feet and for the damage to the tract caused by the waste banks, the loss of the culvert crossing, and the resulting inconvenience in his farming operations. This seems so manifestly out of proportion to the actual damage which appellant must have suffered that it is apparent to us that the jury must either have given undue weight to or have drawn improper conclusions from the testimony before it with reference to this tract. It is therefore our opinion that a new trial must be granted with respect to the issue of damages on tract No. 2.

With reference to tracts Nos. 3 and 4, it appears from the record that branch No. 2 of the proposed ditch will cross the southerly part of tract No. 4 and then cross the southwest corner of tract No. 3. From there it leaves appellant's property and does not connect with the main open ditch until it reaches a point some distance south of appellant's farm. This branch is not to be an open ditch but consists of tile which will be placed under the surface of the ground. The evidence regarding these tracts shows that there are two swales crossing the southerly part of tract No. 4. They both lead into a low spot usually covered by water in the southeast corner of tract No. 4 and the southwest corner of tract No. 3. The proposed tile is to follow the southerly swale on tract No. 4 and go through the water-covered area described above. It will then leave appellant's land. The engineer testified that this tile, as it enters the southwest corner of tract No. 4, will be four feet deep as it crosses onto appellant's property and will reach a depth of nine feet before leaving it.

The viewers testified that they classified the land to be benefited into three types: "A" land, which would be benefited in the amount of $80 an acre; "B" land, at $60 an acre; and "C" land, at $40 an acre. There is further testimony by the viewers that on tract No. 3 there is one acre of "A" land, one acre of "B" land, and four acres of "C" land and that on tract No. 4 there are two acres of "A" land, four acres of "B" land, and five acres of "C" land. This totals $900

in benefits to these tracts according to their method of computation. In addition, the viewers assessed tract No. 3 for 200 feet of tile and tract No. 4 for 1,600 feet at 50 cents per foot or $900, thus making a grand total of $1,800 on those two tracts. The jury raised these assessments $100 on each tract for a total of $2,000.

It is the position of appellant under the record here that the jury should not have been permitted to assess any benefits as far as the tile was concerned and that the amount assessed to the benefit of the land was excessive.

Respondent relies on In re County Ditch No. 67, Murray Co. 151 Minn. 292, 186 N. W. 711. In that case the viewers had divided the land into four classes, running from land entirely covered by water to land which would raise crops in all seasons but which would be benefited by the drainage. They estimated benefits to the lands in the respective classes at $100, $80, $50, and $20 per acre. They also estimated an additional benefit to land where tile was to be laid at the rate of 17 cents per lineal foot of tile. This court there stated that the grounds upon which these witnesses based their opinions and the method by which they arrived at their conclusions were matters for the jury to take into consideration, in connection with all the other evidence, in determining the weight and effect to be given to their testimony. The court then went on to comment that it was unable to say that the jury gave undue weight or drew improper conclusions from the evidence.

We do not consider that case as determinative here since it appears in the instant case that the jury either gave undue weight or drew improper conclusions from the evidence in assessing total benefits to tracts Nos. 3 and 4 at $2,000 when the actual benefits, according to the viewers' classifications, were $900 to the three classes of land. There is no showing of what, if any, the additional benefits will be to those two tracts as a result of the tile. While there is a serious dispute between the parties as to the number of acres which will be benefited on tracts Nos. 3 and 4, the greatest number of acres which it appears will be benefited, according to the viewers' classification, is three acres of "A" land, five acres of "B"

land, and nine acres of "C" land. There is no showing that more land will be benefited than referred to above. The testimony of the viewers is that the "A" land will be benefited $80 per acre, the "B" land $60, and the "C" land $40. In fact, one of the viewers said that the benefits would be *no more* and *no less* than those amounts. It therefore seems clear from the record that the most benefits shown as to tracts Nos. 3 and 4 were $900. Any amount above that, without some actual showing of additional benefits, would result in assessing those tracts more than they appear to have been benefited.

There can be no justification for any proceeding which charges the land with an assessment greater than the benefits; to do otherwise would be to appropriate private property to public uses without compensation. Alden v. County of Todd, 140 Minn. 175, 179, 167 N. W. 548, 549. It is therefore our opinion that a new trial should be granted on the issue of benefits on tracts Nos. 3 and 4.

On tract No. 5 the viewers found that seven acres of land would be benefited, and they assessed the tract $340. The jury did not change this amount. The evidence is conflicting as to this tract. However, there is evidence as to low spots in the northeast corner, the northwest corner, and on the south line of the tract, covering an area of about seven acres, from which the jury could have found benefits of $340. Therefore, the order denying a motion for new trial and refusing to vacate the verdict must be affirmed as to tract No. 5.

Reversed and remanded for new trial in accordance with this opinion.

Reversed.