In the Matter of the REDETERMINA-
TION OF BENEFITS OF NICOL-
LET COUNTY DITCH 86A.

No. C7–92–34.

Court of Appeals of Minnesota.

June 30, 1992.

Robert M. Halvorson, Gislason, Dosland, Hunter & Malecki, New Ulm, for petitioners-appellants.

Ivor N.C. Jorgenson, Alvin R. Mueller, Mueller, Lowther & Vickery, New Ulm, William G. Peterson, William Peterson & Assoc., Ltd., Bloomington, for objectors-respondents.

Willis M. Gustafson, Nicollet County Atty., St. Peter, for Nicollet County.

Considered and decided by AMUNDSON, P.J., and PARKER, and KALITOWSKI, JJ.

## OPINION

PARKER, Judge.

In January 1990 a group of landowners in Nicollet County (petitioners) submitted a petition for redetermination of the benefits of Nicollet County Ditch 86A to the Nicollet County Board of Commissioners (the Board).

At a public hearing in March 1990 the board appointed three viewers to conduct the redetermination inquiry. The Board

met several more times before approving the petition in November 1990.

A group of landowners (objectors) affected by the redetermination appealed the Board's decision to the district court and moved for summary judgment. After the trial court granted the motion, petitioners appealed, and objectors moved for a remand to the trial court for the purpose of determining their claims for attorney fees. This court dismissed the appeal as premature because the attorney fees issue had not been decided. The trial court, in a supplemental order, granted summary judgment and denied the motion for attorney fees. The trial court remanded to the Board to determine whether the petition contained the statutorily required number of signatures.

Petitioners challenge the trial court's conclusion that the redetermination was statutorily insufficient. Objectors assert that the trial court erred in remanding the petition to the Board and in declining to award them attorney fees. We affirm.

## FACTS

The Nicollet County Board of Commissioners established Nicollet County Ditch No. 86 in 1965. In 1975 the ditch was extended to provide pumps and culverts near Swan Lake and was redesignated as County Ditch 86A. The ditch requires pumps to lift water into Swan Lake.

In the 1965 and 1975 proceedings, the board appointed viewers, who appraised the land and divided the properties benefiting from the ditch into four categories. The categories ranged from the properties that benefited most from the ditch to those that benefited least. The assessments made on each parcel were based on the relative benefit that each property derived from the ditch.

In January 1990, 34 landowners petitioned the Board, requesting a redetermination of the benefits of Ditch 86A. Prior to the Board's adoption of the petition in November 1990, 13 petitioners purported to withdraw their names from the petition.

In March 1990 the Board held a public hearing to consider the petition and appointed viewers to inspect the affected property for the redetermination. The Board considered the viewers' report recommending a flat-rate assessment on all of the affected property and remanded it to the viewers with a recommendation that they consider a two-tier assessment system. In August 1990 the viewers reported to the Board that they maintained their original recommendation of a flat-rate assessment.

In November 1990 the Board ordered the redetermination based on the flat-rate assessment recommended in the viewers' report. The Board concluded that the 1975 determination of benefits had failed to consider the burden of maintaining the pumps after the original cost of constructing the drainage system. The redetermination decreased petitioners' benefits from $119,250 to $67,521 and increased objectors' benefits from $43,249 to $90,249.

## ISSUES

1. Was the redetermination invalid as a matter of law?

2. Was the petition for redetermination statutorily sufficient?

3. Were objectors entitled to an award of attorney fees?

## DISCUSSION

### Standard of Review

■ Minnesota Rule of Civil Procedure 56.03 provides that the trial court shall award summary judgment where "there is no genuine issue as to any material fact and * * * either party is entitled to a judgment as a matter of law." On appeal from an award of summary judgment, this court's sole function is to determine "(1) whether there are any genuine issues of material fact and (2) whether the trial court erred in its application of the law." *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979).

■ When reviewing questions of law, this court need not accord deference to the

trial court's determination. *A.J. Chromy Constr. Co. v. Commercial Mechanical Serv., Inc.*, 260 N.W.2d 579, 582 (Minn. 1977). Where the trial court applied the law to undisputed facts, the reviewing court may treat that determination as a matter of law. *Yost v. Millhouse*, 373 N.W.2d 826, 829 (Minn.App.1985). Further, where the lower court applies statutory language to the facts of a case, that conclusion is a matter of law and does not bind this court. *Nhep v. Roisen*, 446 N.W.2d 425, 426 (Minn.App.1989), *pet. for rev. denied* (Minn. Dec. 1, 1989).

I

■ Petitioners argue that the trial court erred in granting summary judgment and in finding that the Board's adoption of a uniform assessment for all property owners violated the redetermination statute.

Minn.Stat. § 103E.351, subd. 1 (1990), provides:

**Subdivision 1. Conditions to redetermine benefits and damages; appointment of viewers.** If the drainage authority determines that the original benefits or damages determined in a drainage proceeding do not reflect reasonable present day land values or that the benefited or damaged areas have changed, *or if more than 50 percent of the owners of property benefited or damaged by a drainage system petition for correction of an error that was made at the time of the proceedings that established the drainage system,* the drainage authority may appoint three viewers to redetermine and report the benefits and damages and the benefited and damaged areas.

(Emphasis added.) Minn.Stat. § 103E.311 (1990) provides that the three appointed viewers "shall determine the benefits and damages to all property affected by the proposed drainage project and make a viewers' report." Minn.Stat. § 103E.315, subd. 5 (1990), further provides:

(a) The viewers shall determine the amount of benefits to all property within the watershed. * * * The benefits may be based on:

(1) an increase in the current market value of property as a result of constructing the project;

(2) an increase in the potential for agricultural production as a result of constructing the project; or

(3) an increased value of the property as a result of a potential different land use.

(b) Benefits and damages may be assessed only against the property benefited or damaged or an easement interest in property for the exclusive use of the surface of the property.

■ Whether land involved in a drainage proceeding is benefited is a question of fact. *In re Ittel*, 386 N.W.2d 387, 389 (Minn.App.1986), *pet. for rev. denied* (Minn. July 16, 1986). "[B]efore there can be an assessment against land from which water drains into the ditch there must be a beneficial drainage." *Seidlitz v. Faribault County*, 237 Minn. 358, 364, 55 N.W.2d 308, 312 (1952). Land is benefited where a ditch provides an outlet for water that would otherwise accumulate on the land. *In re County of Douglas Joint County Ditch No. 4*, 419 N.W.2d 639, 641 (Minn. App.1988). In determining special assessments, furthermore, the public body must consider the increase in market value of benefited land. *See Ewert v. City of Winthrop*, 278 N.W.2d 545, 548–49 (Minn.1979); *Nyquist v. Town of Center, Crow Wing County*, 312 Minn. 266, 269–70, 251 N.W.2d 695, 697 (1977).

The viewers found that the pump system installed in 1975 had created a unique drainage system. They also found that the costs of maintaining the drainage system should be assessed equally per acre for benefits received from the continued drainage provided to all the lands within the system. After considering the petition on a number of occasions, the Board adopted the viewers' findings.

In granting objectors' motion for summary judgment, the trial court concluded that the flat-rate assessment violated the statute:

While the viewers' analysis has a certain appeal, it is contrary to both statutory and constitutional law, and the flat-rate

determination of benefits cannot be allowed to stand.

\* \* \* \* \* \*

The pumps used in Ditch 86A benefit the same parcels as the ditch, and the cost of running the pumps falls properly on the benefited property in proportion to their benefit.

The trial court correctly concluded that the flat-rate assessment violated the statute as a matter of law. The statute sets forth criteria on which the viewers may base their determination and provides that benefits and damages may be assessed only against property benefited or damaged. In proceedings held in 1965 and 1975, assessments made on each parcel of land were based on the relative benefit that each property derived from the ditch. The record provides no indication that the pump system modified the relative benefits derived from the ditch. Furthermore, the viewers' recommendation did not purport to assess benefits in any manner proportionate to the actual benefits derived from the ditch. The flat-rate assessment therefore failed to comply with the relevant statutory requirements.

 As well as violating pertinent statutory provisions, the flat-rate assessment violated state and federal constitutional provisions. Generally,

> [t]here can be no justification for any proceeding which charges the land with an assessment greater than the benefits; to do otherwise would be to appropriate private property to public uses without compensation.

*In re Frank*, 242 Minn. 172, 179, 64 N.W.2d 750, 754 (1954). If an assessment exceeds a benefit, the action taken by the public body is a taking of property. *Ewert*, 278 N.W.2d at 548; *see In re Third Street Widening*, 185 Minn. 170, 178, 240 N.W. 355, 358 (1932) (special assessments must "be confined to property specially benefited" and must "not exceed such special benefits") (quoting *State ex rel. Oliver Iron Mining Co. v. City of Ely*, 129 Minn. 40, 47, 151 N.W. 545, 547 (1915)). Neither the viewers' findings nor any other portion of the record contradicts the trial court's con-

clusion that the pump system benefited the land proportionally. The viewers' recommendation and the Board's adoption of the flat-rate assessment failed to consider the actual benefits that land derived from the pump system. We therefore conclude that the assessment violated not only the statute, but also fundamental constitutional principles.

## II

 Objectors maintain that the trial court should have dismissed the petition for redetermination because the number of petitioners fell below the 50 percent minimum that Minn.Stat. § 103E.351 requires. Petitioners contend that the number of petitioners exceeded the 50 percent requirement.

We conclude that the trial court correctly remanded to the Board for a determination of whether the petition contained the statutorily required number of petitioners. Section 103E.351 contains no provision governing the treatment of petitioners who sign the petition but later withdraw. Minn.Stat. § 103E.202, subds. 1, 3 (1990), does, however, and provides:

> **Subdivision 1. Applicability.** This section applies to *a petition for a drainage project and a petition for repair.*
>
> \* \* \* \* \* \*
>
> **Subd. 3. Withdrawal of a petitioner.** After a petition has been filed, a petitioner may not withdraw from the petition except with the written consent of all other petitioners on the filed petition.

(Emphasis added.)

On February 13, 1990, when the Board received the petition for redetermination, it contained signatures of 34 of the 64 landowners affected by the ditch. During the following months, the Board acted on the petition and continued the proceedings on four separate occasions. The Board finally approved the petition for redetermination of benefits on November 13, 1990. During the nine-month period during which the Board periodically met, 13 original petitioners attempted to withdraw.

The trial court acknowledged that

after the filing of the petition, several signers attempted to withdraw their signatures without any determination by the Board as to whether their withdrawal was effective and what effect that withdrawal might have on the status of the petition.

The court remanded to the Board, concluding that because

> the number of names on the petition was very close to 50%, it was incumbent on the Board to determine the legal sufficiency of the signatures before proceeding, as well as to take some action with regard to the attempted withdrawals of signatures.

We hold that the trial court correctly remanded the matter to the Board. We note that the section 103E.202 limitation on withdrawals expressly applies only to *petitions for drainage projects and for repair.* The doctrine of *inclusio unius est exclusio alterius,* codified in Minn.Stat. § 645.19 (1990), compels us to conclude that, for purposes of the remand, the statutory limitation upon withdrawal would not apply to the section 103.351 petition for redetermination. The Board therefore may determine the intent of the purported withdrawees and whether the petition still contained the statutorily required number of signatures.

### III

 Objectors finally argue that they should receive attorney fees. Generally, parties may not recover attorney fees absent contractual or statutory authorization. *Jacobs v. Rosemount Dodge-Winnebago South,* 310 N.W.2d 71, 79 (Minn.1981). An exception to the general rule exists where the victorious litigant has conferred a substantial benefit that can be spread proportionally among an ascertainable class. *Grassman v. Minnesota Bd. of Barber Examiners,* 304 N.W.2d 909, 912 (Minn.1981).

The trial court correctly concluded that fees were not warranted, stating that the case could not be characterized as one of quasi-trustees seeking to preserve property, but that the litigants were acting primarily to protect their own property from taxation. The record supports the trial court's conclusions, and we affirm.

### DECISION

The trial court did not err in granting summary judgment. The flat-rate assessment adopted by the Board violated the statutory criteria upon which assessments must be based. The trial court correctly remanded to the Board to determine whether the petition contained the signatures of 50 percent of the landowners affected by the drainage system, as required by statute. The trial court did not err in declining to award attorney fees to objectors.

Affirmed.