IN RE PETITIONS FOR REPAIR OF COUNTY DITCH NO. 51,
RENVILLE COUNTY.
JOSEPH H. BRAUN v. COUNTY OF RENVILLE
AND OTHERS.[1]

May 13, 1955.

No. 36,545.

*Paul Ter Steeg,* for appellant.

*T. J. Wagemaker, Erwin G. Schwartz,* and *Russell L. Frazee,* for respondents.

CHRISTIANSON, JUSTICE.

This is an appeal from an order of the district court affirming an order of the board of county commissioners of Renville county issued

---

[1]Reported in 70 N. W. (2d) 329.

pursuant to M. S. A. 106.471 directing that repairs "B" and "C" be made to county ditch No. 51 of Renville county, Minnesota.

County ditch No. 51 was constructed in 1914 at a cost of $50,916.84 to effect drainage of an area comprising the village of Olivia, Minnesota, and several farms situated east, northeast, and southeast of the village. The ditch consists of three unconnected tile lines which have separate outlets into county ditch No. 63 which is located west of Olivia. For purposes of this opinion the three tile lines will be referred to as the North Branch, which flows through the northern part of Olivia; the Main Branch, which flows through the center of Olivia; and the South Branch, which flows through the southern part of the village. The original assessed benefits of the ditch amounted to $65,278, but on October 30, 1953, the benefits were reassessed to include certain land not originally assessed which raised the total benefits to $95,054. Appellant's land which was assessed for the cost of the original construction of the entire ditch is drained solely by the North Branch of the ditch, and the repairs to the Main Branch will not affect the drainage of his land.

For purposes of identification in this proceeding, the Main Branch of county ditch No. 51 has been lineally divided into four consecutive sections labeled A, B, C, and D. Since 1948, parts of sections A, B, and C have been in a state of disrepair. On August 16, 1951, a contract was let by the county board for repairs to section A at a cost of $37,534.47. This contract was the result of proceedings emanating from a petition for repair under § 106.471, which was filed with the board on April 19, 1950, and granted by that body on April 10, 1951. These repairs were completed in 1952. Subsequently on December 16, 1951, a petition was filed with the board for repair of section B, and on December 19, 1951, a petition was filed for repair of section C. All of the foregoing petitions were made by the owners of less than 26 percent of the area of property affected by and assessed for the original construction of county ditch No. 51. The engineer appointed by the county board to examine said drainage system and make a report of the necessary repairs thereto made and filed his report as provided by law recommending that the repairs in question

be made and estimating that the cost of the repair for section B would be $22,667.50 and the cost of the repair for section C would be $53,690. Thereafter hearings were held, and on March 23, 1954, the county board found that said repairs were necessary and were for the best interest of the property owners affected and ordered that sections B and C of the Main Branch be repaired as recommended by the engineer.

A pro rata assessment has been made against the property assessed for the original construction and establishment of county ditch No. 51 including appellant's land. No petition has been filed for the repair of section D which is merely an open ditch and is adequate at the present time.

■ Appellant contends that the repairs to sections B and C violate the statutory limitations upon the amount which a county board is authorized to spend on repairs[2] to a ditch system in a given year. Section 106.471 provides two methods whereby a county board may effect repairs to a county ditch. First, where pursuant to the annual report of a committee of the board or an appointed ditch inspector it appears that repairs are necessary and such report is approved by the board, if the estimated cost of the repairs is less than $1,000, they may be accomplished by day labor without advertisement for bids or entry into a contract.[3] However, the explicit limitation upon such repairs found in § 106.471, subd. 2(b), is that—

"* * * In one calendar year the board shall not spend or contract to be spent for repairs or maintenance on one ditch system a sum greater than ten per cent of the cost of construction thereof in that county, except as provided in subdivision 4. * * *"

[2]As defined by § 106.471, subd. 1, the term repair "means restoring a ditch system or any part thereof as nearly as practicable to the same condition as when originally constructed or subsequently improved, including resloping of open ditches and leveling of waste banks thereon if deemed essential to prevent further deterioration, and such routine operations as may be from time to time required to remove obstructions and preserve the efficiency of the ditch."

[3]§ 106.471, subd. 2(a, b).

The second method by which repairs may be effected is under § 106.471, subd. 4(a), whereby a repair proceedings may be instituted by petition "by any party or corporation, municipal or otherwise, interested in or affected by a drainage system." Upon filing of the petition, § 106.471, subd. 4(a), provides that—

"* * * Thereupon, if it appears to the board or court that such ditch is out of repair, the board or court shall appoint *an engineer to examine the ditch and make report of the necessary repairs,* with the estimated cost thereof, * * *."

Subd. 4(b) further provides for a hearing on the engineer's report and that—

"* * * If at this hearing it appears from the engineer's report and the evidence presented *that the repairs recommended are necessary and for the best interests of the property owners affected,* and the board or court shall so find, the board or court shall make findings and order accordingly. * * *" (Italics supplied.)

However, § 106.471, subd. 4(c), provides that where the petition is "made by the owners of not less than 26 percent of the area of the property affected by and assessed for the original construction of the ditch,"—

"* * * if upon the hearing required by subparagraph (b) it appears *that the ditch is in need of repair so that it no longer serves its original purpose,* then the board or court shall order the repairs and the letting of a contract therefor as provided by subparagraph (b); * * *." (Italics supplied.)

The only limitation upon the amount to be expended for repairs to a ditch system pursuant to proceedings instituted by petition under § 106.471, subd. 4, is found in a proviso tacked to the end of the foregoing subparagraph (c), which states:

"* * * provided, that no job of repair shall be ordered if it appears that the cost thereof will exceed the total benefits theretofore determined in the ditch proceeding."

Appellant asserts that where, as in the instant case, the petition is made by the owners of less than 26 percent of the area of the property affected by and originally assessed for construction of the ditch, the proceedings are governed exclusively by § 106.471, subd. 4(b), and that the foregoing limiting proviso of § 106.471, subd. 4(c), is not applicable thereto. Appellant asserts further that to permit proceedings brought under subparagraph (b) to be without limitation as to cost would violate due process, and, therefore, it must be presumed the legislature intended that the limitation of § 106.471, subd. 2(b), to the effect that the cost of repairs to a ditch system in one calendar year may not exceed ten percent of the original cost of constructing the ditch, should be applied to repair proceedings pursuant to petition by the owners of less than 26 percent of the property.

However, an examination of the statutory history of the drainage ditch repair provisions clearly indicates that the proceedings pursuant to petition under subd. 4 and repairs resulting from a determination of the county board from the annual report under subd. 2 should not be subject to the same limitations. Under L. 1925, c. 415, § 54, all repairs to ditches were effectuated by a proceeding leading to a formal award of a contract which was instituted either by petition or upon the board's authority. Authority whereby the county board could forego appointment of an engineer and the formal awarding of a contract comparable to § 106.471, subd. 2, in order to accomplish limited repairs[4] seemingly incident to normal maintenance functions was granted the county board by L. 1927, c. 51, § 3, when the county ditch inspectors were initially required by statute to report needed repairs. In contrast, it was not until L. 1947, c. 143, § 47, which is the basis for § 106.471, that any blanket limitations were placed upon the cost of repairs which could be ordered in a proceeding pursuant to petition. Moreover, the wording of § 106.471, subd. 2(b), to the effect that the ten percent of the cost of construc-

---

[4]As enacted in L. 1927, c. 51, § 3, the board could act upon its own authority only when the amount of repairs did not exceed $500. In L. 1947, c. 143, § 47, the present $1,000 limitation was placed on the cost of such repairs.

tion limitation found therein applies "except as provided in subdivision 4" lends complete credence to the view that limitations placed upon the board acting upon its own authority are not to apply when it acts pursuant to a petition. Thus, we find that § 106.471, subd. 2(b), has no applicability to the proceeding in the instant case.

Furthermore, we do not deem the county board to possess authority to order repairs of unlimited cost where the petition is made by the owners of less than 26 percent of the area affected by and assessed for the original construction of the ditch merely because of the unfortunate placement of the limiting proviso in subd. 4(c).[5]

A statutory construction establishing that the sole limiting proviso of the subdivision does not apply to proceedings instituted by a petition made by the owners of less than 26 percent of the property affected by and assessed for the original construction of the ditch but that the limitation affects only those proceedings where the petition is made by a more representative group consisting of the owners of not less than 26 percent of the property would be contrary to the policy manifested in earlier legislative limitations[6] and untenable in view of the presumption of § 645.17(1) that—

---

[5]Section 106.471, subd. 4(c), provides: "If the petition referred to in subparagraph (a) be made by the owners of not less than 26 percent of the area of the property affected by and assessed for the original construction of the ditch, and if upon the hearing required by subparagraph (b) it appears that the ditch is in need of repair so that it no longer serves its original purpose, then the board or court shall order the repairs and the letting of a contract therefor as provided by subparagraph (b); provided, that no job of repair shall be ordered if it appears that the cost thereof will exceed the total benefits theretofore determined in the ditch proceeding."

[6]Under L. 1927, c. 51, § 3, where the cost of repairs would exceed 30 percent of the original cost of construction, the petition had to be signed by a majority of the property owners owning 51 percent of the property affected thereby before action could be taken thereon, while petitions for repairs costing less than 30 percent of the original cost of construction could be made by "any party, parties or corporation, municipal or otherwise, interested in or affected by a drainage system * * *."

"The legislature does not intend a result that is absurd, * * * or unreasonable."

The danger that a county board would pour funds into repair of a ditch in amounts unwarranted by the benefits assessed thereto is present regardless of the number of signatures upon the petition, and we see no logical basis for a legislative distinction between the two types of petitions on that rationale. We conclude that the only substantial difference between repair proceedings instituted under subparagraphs (b) and (c) is that the board need not find that the repairs requested are "for the best interests of the property owners affected" in the latter case before being compelled to order the repairs and that all repairs ordered pursuant to proceedings under subd. 4 are limited in cost to the benefits assessed to the ditch.[7]

Applied to the instant case, the foregoing construction of subd. 4 does not invalidate the proceedings or assessment for repairs "B" and "C" since the estimated total cost thereof is $76,357.50 as compared with the assessed benefits of $95,054 attributable to county ditch No. 51. Although addition of the cost of repairs to section A, or $37,534.37, to the cost of repairs "B" and "C" would increase the total cost of repairs to the Main Branch of the ditch to $113,891.87, the proceedings for repairs to section A were independent of those involved in the present case,[8] and appellant has failed to show that the engineer appointed by the board in either proceeding for repairs to section A or those for repairs to sections B and C failed to examine and report upon the condition of all three branches of ditch No. 51 as required by § 106.471, subd. 4(a), which states:

---

[7]While a blanket limitation on the cost of repairs which can be made to a ditch may prove impracticable in instances where the depreciated value of the dollar has raised the cost of necessary repairs in excess of benefits assessed on the value of the dollar some 40 years ago, this is a problem that must be met by legislative enactment rather than by distortion of the existing statutes.

[8]The repairs for section A were ordered on April 10, 1951, while the repairs for sections B and C were not ordered until March 23, 1954, pursuant to petitions filed on December 16 and 19, 1951.

"* * * the board or court shall appoint an engineer to examine the ditch and make report of the necessary repairs, * * *."[9]

The district court has found that all proceedings with reference to repairs "B" and "C" are in all respects regular and in accordance with the statute, that "Section D of Main Branch is an open ditch and is adequate at the present time, and that no petition has been presented to the County Board for the repair of Section D of Main Branch of County Ditch No. 51." On the record before us we find nothing which would justify us in setting aside these findings. Furthermore, we find no merit in appellant's contention that § 106.471, subd. 4, is void for uncertainty and indefiniteness.

■ Appellant also contends that the pro rata assessment against his land which is based upon the original assessment of benefits to the drainage system is a taking of property without due process of law since his land is not drained by the Main Branch of county ditch No. 51. Ordinarily the propriety of an assessment for public improvements lies in a factual determination of whether benefits will accrue therefrom to the land in question. As this court stated in In re Petition for Repair of County Ditch No. 1, Faribault County, 237 Minn. 358, 361, 55 N. W. (2d) 308, 311:

---

[9]The attorney general of this state has construed § 106.471, subd. 4, as follows (Opinion Attorney General, No. 602-J, May 22, 1950):

"* * * Several petitions for repair of the same ditch should not be pending at one time. If several proceedings for the repair of the same ditch were pending at one time, they should all be regarded as one proceeding. But after a repair proceeding has been completed, I do not consider that another proceeding may not be commenced. * * *

* * * * *

"The engineer's report should refer to the entire ditch and not to a single lateral. You will note that subd. 4, paragraph (b) refers to a contract for the repair of the system, not a part thereof. Paragraph (c) deals with what shall be done 'if it appears that *the ditch is in need* of repair'. *It refers to it as a unit.*

"When it is apparent to the board or court that a large part of the ditch system is in need of repair, the limitation in the law as to cost cannot be evaded by repairing only a part of the ditch and then subsequently in another proceeding repairing another part which required repair at the time that the first repair was made." (Italics supplied.)

"In determining whether an assessment for benefits in a drainage proceeding may be sustained, certain legal principles must be observed. Before there can be an assessment, there must be some benefit to the land involved. Conversely, where there is no benefit there can be no assessment; otherwise the proceedings run afoul of the constitutional proscription against the taking of property without due process of law."

However, the assessment involved in the instant case is for the cost of repairs to an established ditch system, and since it appears to have been properly computed and levied in accordance with § 106.471, subd. 5(a), appellant's challenge of the constitutionality of the assessment against his land in reality challenges the constitutionality of subd. 5(a).[10]

In conjunction with the policy expressed in § 106.471, subds. 2 and 4, that the necessity of repairs is to be determined in relation to the condition of the entire ditch and not a particular segment thereof,[11] the legislature has prescribed in § 106.471, subd. 5(a), that the cost of repairs to a ditch system is to be spread over all property benefited by the system. Subd. 5(a) provides in part as follows:

"If there are not sufficient funds to the credit of the drainage system so to be repaired, the county board shall apportion and assess the cost of the repairs pro rata upon all lands, corporations and municipalities which have participated in the total benefits as theretofore determined."

This unitary view of a ditch system is further emphasized in § 106.471, subd. 6, which provides that a fund for repairs may be created by assessment:

---

[10]Since it is conceded in the instant case that appellant's land is benefited by county ditch No. 51 and that it was originally assessed benefits therefor, our decision in In re Petition for Repair of County Ditch No. 1, Faribault County, 237 Minn. 358, 55 N. W. (2d) 308, involving an attempt to levy an assessment for the cost of repairs upon land which had not been assessed for the original construction of the ditch and had received no benefits therefrom, is clearly not in point.

[11]See, note 9 and text thereto.

"* * * against all the parcels of land, corporations and municipalities theretofore assessed for benefits in proceedings for the construction of the ditch system, including lands not originally assessed therefor but subsequently found to be benefited according to law. Such assessment shall be made pro rata according to benefits determined."

It is to be noted that subd. 6 does not require that amounts collected for the repair fund be earmarked for expenditure on any particular segment of the ditch.

It seems clear from the foregoing provisions that the legislature intended that all lands benefited by a ditch system bear the cost of any repairs thereto on a pro rata basis. If specific benefits to each particular parcel of land drained by a ditch must be shown, we would in effect establish that a lower riparian owner who is served by a drainage ditch could not be assessed for repairs to the ditch made at a point abutting the lands of a higher riparian owner[12] or that a landowner served by one lateral of a ditch system could not be assessed for repairs on another. Such a view not only would impede the efficient maintenance of ditch systems by making landowners reluctant to petition for necessary repairs for fear of the heavy costs thereof but also would require that a new assessment of benefits be made for each repair proceeding against the individual lands involved—a procedure which is not contemplated by our present drainage statutes. Moreover, landowners in appellant's position are not wholly denied compensation under the existing statutes. For example, while it appears in the instant case that appellant's share of the estimated cost of the total repairs to sections B and C amounts

---

[12]This situation is to be distinguished from an assessment for construction of a drain wherein the mere fact that water from higher land flows into the drain does not constitute benefit to the higher land because of the servitude imposed upon lower land with respect to the flowage of surface waters. See, Sheehan v. Flynn, 59 Minn. 436, 61 N. W. 462, 26 L. R. A. 632; In re Improvement of County Ditch No. 1, Yellow Medicine County, 241 Minn. 6, 62 N. W. (2d) 80.

to $2,557.97,[13] he has the assurance under § 106.471 of future reciprocity in repair cost sharing by landowners on the Main and South Branches of the ditch in case the North Branch should require repair.

In view of the continuing necessity of repairs and the concept of a drainage system as an operating unit serving a particular area, it cannot be said that the legislature's determination that the cost of repairs should be assessed on a pro rata basis according to benefits assessed for the original construction of the ditch and not according to actual benefits to individual land for the particular repair constitutes a " 'palpably arbitrary and a plain abuse' of power"[14] in violation of U. S. Const. Amend. XIV. Furthermore, since § 106.471, subd. 5(a), provides a practical method of assuring the future maintenance and operation of an entire ditch system on an equitable basis, it is our opinion that it does not violate due process of law under our state constitution.

It follows that the district court's findings of fact support its conclusions of law and therefore the order appealed from should be affirmed.

Affirmed.

---

[13]The benefits originally assessed to appellant's land were $3,187. Such benefits constitute approximately 3.35 percent of the total benefits assessed to county ditch No. 51 and as multiplied against the cost of repairs to "B" and "C" produces an assessment of $2,557.97.

[14]Valley Farms Co. v. County of Westchester, 261 U. S. 155, 164, 43 S. Ct. 261, 263, 67 L. ed. 585, 590; Miller & Lux v. Sacramento Drainage Dist. 256 U. S. 129, 41 S. Ct. 404, 65 L. ed. 859.