## IN RE REPAIR OF JUDICIAL DITCH NO. 1 OF COUNTIES OF CLEARWATER, PENNINGTON, POLK, AND RED LAKE.
## BOARD OF COUNTY COMMISSIONERS OF COUNTY OF RED LAKE v. COUNTY OF CLEARWATER.

210 N. W. 2d 859.

September 14, 1973—No. 43882.

*John M. Rowe,* for appellant.

*Aurel L. Ekvall,* for respondent.

Considered by Knutson, C. J., and Rogosheske, Peterson, and Gillespie, JJ., without oral argument.

ROGOSHESKE, JUSTICE.

This is a judicial ditch repair proceeding initiated by Red Lake County following its repair of that portion of a four-county unitary judicial ditch located within its boundaries. After completion of the repairs at a cost of $4,213.62, Red Lake, pursuant to Minn. St. 106.471, subd. 3,[1] submitted a claim for reimburse-

---

[1] Minn. St. 106.471, subd. 3, provides in part: "In the case of any ditch situated in two or more counties and at the end of each year or other convenient period following its completion, the auditor of any county may present a statement, based on the original apportionment of cost made by the court following the establishment of the ditch, to each county affected showing the nature of the repairs made to the ditch and the costs and expenses thereof, and when allowed by the board, such statement shall be paid to the submitting county, and in the event of the failure of any county to pay such statement, the board of any county affected may petition the court having jurisdiction thereof. Such petition shall show the nature of the repairs made to the ditch in the county during the period and the necessity thereof, and the costs and expenses thereof, and shall pray the order of the court apportioning such costs and expenses among the counties affected. Upon the filing of the petition the court shall, by order, fix a time and place for hearing thereon and shall cause the clerk to give notice of the hearing to each county affected, by publication and by mailed notice to its auditor. At or prior to the time of hearing, the auditor of each county affected, except petitioner, shall file with the court a statement showing all repairs made to the ditch in his county, not previously reimbursed hereunder, together with the nature thereof, the necessity thereof, and the costs and expenses thereof. At such hearing the court shall have jurisdiction of the respective counties and shall hear all interested parties. If it ap-

ment of the proportionate share of the costs to Polk, Pennington, and Clearwater Counties, through which the judicial drainage system passes. The respective claims were based upon original apportionment costs made by the district court when the ditch was established in 1913, namely, 63/82 to Clearwater, 14/82 to Polk, and 1/82 to Pennington, with 4/82 apportioned to Red Lake. Polk and Pennington, upon approval of their respective county boards, paid their apportionment, but Clearwater refused. Following a petition to the district court, a hearing on affidavits submitted by the parties was held, and upon findings of fact and conclusions of law, the court determined that Clearwater was not liable for its proportionate share of the costs. Red Lake appeals. Since application of the governing statute, § 106.471, to the undisputed facts renders Clearwater liable for its pro rata share of "reasonable" and "proper" costs incurred for "necessary" repairs, we reverse and hold that Clearwater is obligated to reimburse Red Lake for 63/82 of the costs of repairs.

Judicial Ditch No. 1, as it is identified in the record, was established by order of the district court on February 19, 1913. It was constructed during the following 2 years at a cost of $62,632.25 and consists of 15½ miles of main ditch with approximately 24 miles of laterals. The ditch, originating in Clearwater where the majority of the drainage system lies, follows a northwesterly course across the eastern corner of Polk into Pennington and across the northeast corner of Red Lake, where it is designed to drain into the Clearwater River.

The record indicates that, following the construction of this drainage system, the Clearwater River was dredged by the U.S.

---

pears that the repairs made by either or all the counties affected were necessary, and that the amounts expended therefor were reasonable and proper, the court shall so find and shall balance the accounts between the respective counties, charging each county with its proportionate share of the costs and expenses of all such repairs made by all the counties and crediting each county with the portion thereof theretofore paid by it, and shall order reimbursement by any county or counties affected to any other county or counties as shall be just."

Army Corps of Engineers, and thereafter, because of private and road ditches, all water flowing from Clearwater County into Judicial Ditch No. 1 was diverted into the Clearwater River. As a result, water from Clearwater County does not enter any portion of Judicial Ditch No. 1 located in Red Lake County.

Nevertheless, it is undisputed that a vast amount of silt, numerous trees, and dense brush growth obstructed that part of the ditch in Red Lake. Obstructions also blocked passage of the water into Clearwater River from Red Lake in at least two locations of the ditch passing through Polk. Proceeding under § 106.471, subd. 2,[2] the Board of County Commissioners for Red Lake County, in fulfillment of its statutory duty to maintain the efficiency of the ditch and remain within the cost limitations imposed, ordered a considerable number of the obstructing trees cut and burned, the heavy brush cleared, and the siltation removed.

After this work was completed and upon refusal of Clearwater to pay its "proportionate share of such costs and expenses," Red

---

[2] In pertinent part, § 106.471, subd. 2, provides: "(a) After the construction of a state, county or judicial drainage system has been completed, *the county board shall maintain the same or such part thereof as lies within the county and provide the repairs required to render it efficient to answer its purpose.* The board shall cause such drainage system to be annually inspected, either by a committee thereof, or a ditch inspector appointed by the board, and, if the committee or inspector shall report in writing to the board that repairs are necessary on any ditch system and such report is approved by the board, it shall cause such repairs to be made within the limits hereinafter set forth. * * *

"(b) *If the board* finds that the *estimated cost of repairs* and maintenance of one ditch system for one year *will be less than $10,000, it may have such work done by hired labor and equipment without advertising for bids or entering into a contract therefor. In one calendar year the board shall not levy an assessment for repairs or maintenance on one ditch system in a sum greater than 20 percent of the original cost of construction thereof in that county, or the sum of $10,000 if the said 20 percent is less than $10,000, except as provided in subdivision 4."* (Italics supplied.)

Lake petitioned the district court for an order requiring payment by Clearwater. By pretrial stipulation, both Red Lake and Clearwater agreed that the amount expended for the repairs was "reasonable and necessary for the work done." Although the court then found that at the time the expenditures were made "the entire Judicial Ditch No. 1 system was in need of repair," Clearwater was exonerated from any and all liability on the ground that because total cost of necessary repair to the entire system exceeded $10,000, Red Lake was precluded from proceeding under § 106.471, subd. 2. In addition, because Clearwater admittedly received no benefits from the repairs, it was the trial court's opinion that to now require the landowners adjoining the ditch in Clearwater to be ultimately assessed for that county's pro rata share of the costs would be "impractical and unjust" unless the entire ditch system was repaired by court supervision under § 106.471, subd. 4.[3]

---

[3] The material portion of § 106.471, subd. 4, provides: "(a)  *Upon the filing of a petition by any party* or corporation, municipal or otherwise, interested in or affected by a drainage system, with the auditor in the case of a drainage system lying wholly within the county, or with the clerk of the district court having jurisdiction over said ditch in the case *of a drainage system affecting two or more counties, therein setting forth that the drainage system is out of repair, it shall be the duty* of the auditor in the case of a drainage system lying wholly within the county to present the same to the county board at its next meeting, and *of the clerk in the case of a drainage system affecting two or more counties, to present the petition to the judge of the court within ten days from the filing thereof. Thereupon, if it appears to the* board or *court that such ditch is out of repair, the* board or *court shall appoint an engineer to examine the ditch and make report of the necessary repairs, with the estimated cost thereof, and all details, plans and specifications required to supply the necessary details to let a contract therefor.* * * *

"(b)  Upon the filing of the engineer's report, notice of hearing thereon shall be given as required by section 106.101. * * *

\* \* \* \* \* \*

"(d)  *In all proceedings before the court, the judge shall, by order, apportion the costs and expenses between the several counties in the*

The statutory scheme embodied in § 106.471 governing a multi-county judicial ditch imposes a duty upon each county to maintain and repair that portion of the ditch located within it.[4] Where the estimated cost of repairs and maintenance for any one year does not exceed $10,000, such may be accomplished by day labor "without advertising for bids or entering into a contract therefor."[5] Upon completion of such limited repair, the county or counties may present a statement showing the nature of the repairs and costs of the work to the other counties within which the judicial ditch also lies, and upon approval of the county boards of the counties affected, reimbursement is directed to be made based upon the apportionment of original costs ordered by the district court at the time the ditch was established.[6] If any county fails or refuses to pay its pro rata share of the costs, § 106.471, subd. 3, authorizes the submitting county to petition the district court for an order of apportionment after proper notice is given to each county affected. If, after hearing, the court finds that the repairs made were "necessary" and that the costs expended were "reasonable and proper," the court "shall balance the accounts between the respective counties" who have undertaken to maintain their portion of the ditch, charging each with "its proportionate share of the costs and expenses" and ordering reimbursement "by any county or counties affected to any other county or counties as shall be just."[7]

In our view, the trial court erred in construing § 106.471, subd. 2(b), quoted in the margin, as applicable to the entire judicial ditch. The unambiguous language of § 106.471, subd. 2(a), clearly indicates the legislature's intent to impose upon the board of each county through which a unitary ditch system passes the

same manner as required in the original construction of the ditch." (Italics supplied.)

[4] § 106.471, subd. 2(a).
[5] § 106.471, subd. 2(b).
[6] § 106.471, subd. 3.
[7] § 106.471, subd. 3.

duty to "maintain the same or such part thereof as lies within the county and provide the repairs required to render it efficient to answer its purpose" where, as provided in subd. 2(b), the estimated costs in any year do not exceed $10,000. Thus it is clear that during the year in question Red Lake was not only authorized but required to maintain the efficiency of the section of the ditch passing through its boundaries.

In addition, because court-supervised repairs authorized by § 106.471, subd. 4, are to be undertaken only if the costs of repairs by any county and their eventual assessment against property owners adjoining the ditch will be more than $10,000,[8] the trial court erred in concluding that Red Lake should have proceeded with its repairs under the provisions of § 106.471, subd. 4.

Finally, in our opinion the trial court erred in determining that the language of § 106.471, subd. 3, "limits the power of the court to order reimbursement by the counties affected only as shall be just." Because of the undisputed fact that Clearwater received no benefits from the repairs made by Red Lake, the court concluded that "[t]o order the land owners of Clearwater County to reimburse Red Lake County for any sums expended by them would not be just * * *." As we interpret § 106.471, subd. 3, it is not directed at measuring the extent of benefits one county receives from the repairs made by another county. Rather, in view of the limitations imposed by § 106.471, subd. 2(b), it appears that in the event of a dispute between counties, the legislature intended to vest the district court with supervisory authority to equitably balance the accounts where more than one county was required to expend funds for repairs in any one year to maintain the efficiency of its part of the unitary ditch, and also, for example, if it were found that, although the repairs made by any one county were necessary, the sum expended therefor was excessive. In other words, the court is empowered to reduce the amount of the costs and apportion reimbursement according to its findings of not only what repairs

---

[8] See, § 106.471, subd. 2(b).

were necessary but also as to what expenses were reasonable and to balance the accounts "as shall be just."

Although Clearwater received no benefit from the repairs, nevertheless its remedy lies not in refusing to abide by the legislative command to reimburse Red Lake but either in petitioning to abandon that portion of the ditch located in Clearwater[9] or, if restoration of its part of the ditch is found desirable, in petitioning the district court for an order establishing a joint county ditch or drainage system and thereby vesting administrative authority for the ditch in a board comprised of members from each county board affected.[10] Indeed, to uphold the refusal of Clearwater to pay its pro rata share of the costs incurred by Red Lake would permit any county to evade its liability for reimbursement simply by neglecting that portion of the judicial ditch located within its boundaries until the ditch was incapable of functioning regardless of the extent of repairs made by any included county. In view of the continuing necessity of maintenance and repair of a multicounty ditch operating as a unitary system, In re Repair of County Ditch No. 51, Renville County, 244 Minn. 532, 70 N. W. 2d 329 (1955), to sanction Clearwater's refusal to make reimbursement on the ground that it failed to receive benefit from the repairs would frustrate the legislative mandate of imposing on each county the duty to maintain that portion of the ditch which lies within its boundaries. Accordingly, as we read the stipulation of the parties that the $4,213.62 paid by Red Lake for the repairs represents a reasonable expenditure, and because the trial court found expressly that the repairs made were necessary, Clearwater County is obligated to reimburse Red Lake County for 63/82 of that amount.

Reversed.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the submission, took no part in the consideration or decision of this case.

---

[9] § 106.661.

[10] § 106.015.