APPEAL DISMISSED.

**In the Matter of the Appeal of Mr. Winslow HOLASEK from an Assessment Order of the Coon Creek Watershed District Pertaining to Anoka County Ditch No. 58 (Minn.Stat. Sec. 112.801).**

**No. C2-88-2026.**

Court of Appeals of Minnesota.

March 7, 1989.

---

Winslow Holasek, Andover, pro se.

Harold H. Sheff, Michelle J. Ulrich, Olson, Gunn and Seran, Ltd., Minneapolis, for relator Coon Creek Watershed Dist.

Hubert H. Humphrey, III, Atty. Gen., Paul J. Strandberg, Sp. Asst. Atty. Gen., St. Paul, for respondent Minnesota Bd. of Water and Soil Resources.

Considered and decided by PARKER, P.J., and SCHUMACHER and SCHULTZ,* JJ., without oral argument.

## OPINION

HAROLD W. SCHULTZ, Judge.

Winslow Holasek appealed a $50,000 assessment made by the Coon Creek Watershed District (watershed district) on the owners of land benefitted by Anoka County Ditch No. 58. Following a hearing before an administrative law judge, the Dispute Resolution Committee of the Minnesota Board of Water and Soil Resources (Board) declared the assessment invalid. The watershed district has appealed. We affirm in part and reverse in part.

## FACTS

Anoka County Ditch No. 58 was constructed in 1917. It consists of a main trunk 8.2 miles long and branches 58–1 through 58–9 and laterals 58–3–1, 58–7–1, –2, and –3. The branches and laterals have always been part of the main system, rath-

---

* Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. VI, § 2.

er than independent entities that were later consolidated with the main system.

In 1959 the Anoka County Board passed a resolution transferring jurisdiction over all county ditches, including Ditch 58 and its branches and laterals, to the Coon Creek Watershed District. Thereafter, the watershed district was responsible for the management of all ditches in Anoka County.

In 1979, in response to a petition from adjoining landowners, the watershed district ordered the repair of Ditch 58. The total benefits were found to be $182,585.94 and the cost of repair was found to be $180,591.40. Opponents of the repair petitioned the Environmental Quality Board (EQB), asking for the preparation of an environmental impact statement. The EQB ordered the preparation of the statement, the district court affirmed the EQB, and the supreme court affirmed the district court. *Coon Creek Watershed District v. State Environmental Quality Board*, 315 N.W.2d 604 (Minn.1982).

In May 1980, while the repair order was being litigated, the managers of the watershed district established a repair and maintenance fund for Ditch 58. At this time the watershed district levied an assessment of $40,000, payable in installments of two years, based on Minn.Stat. § 106.471, subd. 6, as amended by 1980 Minn.Laws ch. 552. In October 1983, the district levied another assessment, this one in the amount of $20,000, payable in one year.

In early 1984, the lawsuit requesting an environmental impact statement was dismissed because the district had prepared and submitted a satisfactory statement. Following the dismissal in March 1984, the district reordered the repair of Ditch 58, and levied assessments in the amount of $180,591.40, payable over 15 years. This was the same repair job and assessment as was originally ordered in 1979. The repair covered only a part of the main channel, none of the branches, and none of the laterals.

In October 1985, the Board levied an assessment of $40,000, payable in install-ments of two years, for the maintenance and repair fund of Ditch 58.

Work on the $180,000 repair job got underway in late 1984, and continued through 1987.

On August 10, 1987, the managers of the watershed district levied a $50,000 assessment, payable in installments of one year, for the maintenance and repair fund of Ditch 58. This is the assessment under appeal in this proceeding. The $50,000 assessment from August 1987 was to be used in part to redip the main channel and in part to continue with the ongoing project of repairing branches and laterals. The repair of branches and laterals creates sloughing and siltation in the main channel. The repair of branches and laterals was not included in the $180,000 repair job.

In September 1987, Winslow Holasek, a landowner on the ditch system, filed an appeal with the Board. Holasek stated three grounds for his appeal: First, Ditch 58 repair was just completed and the ditch does not need $50,000 worth of maintenance on it; second, the levy results in assessments that exceed the redetermination of benefits that the managers of the watershed district set for the Ditch 58 system; and third, use of the maintenance fund to clean branches and laterals results in assessing all owners on Ditch 58 for a repair that benefits only the landowners on the particular branch or lateral cleaned.

The matter proceeded to a hearing before an administrative law judge (ALJ). At the hearing, the watershed district asserted that the Board does not have subject matter jurisdiction over the appeal, that Holasek's failure to notify all property owners in the drainage system invalidated the proceeding, and that the assessments were properly made. Following the hearing, the ALJ prepared findings of fact, conclusions, a recommendation and a memorandum. These were forwarded to the Dispute Resolution Committee of the Board. The ALJ determined that the Board has subject matter jurisdiction over the appeal and that Holasek's failure to notify all property owners in the drainage system did not invalidate the proceeding. In addition, the

ALJ determined that the 1987 assessment was based on an improper procedure because it is part of a bit-by-bit approach to petitioned repairs which evades the cost limits in the statutes. Because of this conclusion, the ALJ recommended that the Dispute Resolution Committee declare the resolution assessing $50,000 for the repair of Ditch 58 to be invalidly adopted and therefore void. The Board agreed with the ALJ's recommendation and declared the assessment invalid. The watershed district has appealed this finding.

### ISSUES

1. Did the Minnesota Board of Water and Soil Resources have subject matter jurisdiction over this appeal?

2. Did the Minnesota Board of Water and Soil Resources have subject matter jurisdiction to hear and determine Holasek's appeal of repair assessments levied on the property of others who were not served with notice of the appeal?

3. Does the evidence support the conclusion of the Minnesota Board of Water and Soil Resources that the $50,000 repair assessment in 1987 is part of a bit-by-bit approach to petitioned repairs which evades the statutory cost limitations?

### ANALYSIS

The district contends Holasek must appeal to the district court, rather than to the Board. This contention is based on Minn. Stat. § 106A.091, subd. 1 (1986), which states:

**Grounds for appeal.** A party may appeal to the district court from a recorded order of a drainage authority made in a drainage proceeding that determines:

(1) the amount of benefits;

(2) the amount of damages;

(3) fees or expenses allowed; or

(4) whether the environmental and land use requirements and criteria of section 106A.015, subdivision 1, are met.

Drainage authority is defined as "the board or joint county drainage authority having jurisdiction over a drainage system or

project." Minn.Stat. § 106A.005, subd. 9 (1988).

Chapter 106A relates specifically to drainage ditches. Watershed districts, on the other hand, are governed by Chapter 112. The legislature has given special attention to drainage improvements in the Twin Cities Metropolitan area. Minn.Stat. § 112.431, subd. 1 (1988). The legislature has given the governing bodies of Anoka, Carver, Dakota, Hennepin, Ramsey, Scott and Washington counties the authority to turn management of drainage systems in the counties over to a watershed district, as was done in this case. Minn.Stat. § 112.431, subd. 3. Subdivision 5 of that section, relating to appeals of decisions of watershed districts in these seven counties, states:

**Appeal.** A person aggrieved by an order for improvement or repair by the managers or by an assessment may appeal as provided in sections 112.801 and 112.82.

Section 112.801 relates to appellate procedures from a decision of a watershed district. Subdivision 1 states:

**What can be appealed.** An appeal may be had to the district court *or to the board* by any party, or jointly by more than one, aggrieved by an order of the managers made in any proceeding and entered upon its record determining any of the following matters:

(1) the amount of benefits determined;

(2) the amount of damages allowed;

(3) the allowance of fees or expenses in any proceedings;

(4) a matter that affects a substantial right; or

(5) an order of the managers authorizing or refusing to establish a project and improvement in whole or in part.

Minn.Stat. § 112.801, subd. 1 (1988) (emphasis added).

As used in section 112.801, Board means the Board of Water and Soil Resources. Minn.Stat. § 112.35, subd. 4 (1988). Managers is defined to mean the Board of Managers of a watershed district. *Id.,* subd. 5.

■ Under Chapter 112 of Minnesota Statutes, an appeal from a decision of a watershed district in the Twin Cities Metropolitan area levying an assessment for repair or improvement of a drainage ditch over which that watershed district has jurisdiction is to the district court *or* to the Board of Water and Soil Resources. Under Chapter 112, therefore, the Board had subject matter jurisdiction over Holasek's appeal.

■ 2. The statutes relating to appeal from a decision of either a watershed district or county drainage authority or county board require that notice of the appeal be given to a property owner whose assessment the appellant intends to challenge. Minn.Stat. § 112.801, subd. 4 (1988) provides in part as follows:

> Any person * * * appealing the amount of benefits or damages may include and have considered and determined benefits or damages affecting property other than that person's own. Notice of the appeal must be served upon the owner or occupant of the other property or upon the attorney who represented the owner in the proceedings.

Minn.Stat. § 106A.091, subd. 2(a) (1988) states:

> A person who appeals the amount of benefits or damages may include benefits and damages affecting property not owned by the appellant. Notice of the appeal must be served to the auditor and to the owner or occupant of the property included in the appeal or to the attorney representing the property owner in the proceedings.

Holasek admits that he did not serve notice on any other landowners. Some other property owners did inquire about the appeal; however, none perfected their own appeal or intervened or otherwise joined in Holasek's appeal.

In determining that notice to the other property owners in the area served by Ditch 58 was not necessary, the Board stated:

> It is clear that in situations where an appeal will result in a lowering of one person's benefits and the raising of another's, notice to the other is appropriate, both as a matter of statutory construction and as a matter of due process. * * * In Holasek's case, however, he is not asking that benefits be redetermined so as to exclude his property * * *. Instead, he is saying that no one should have to pay because the board of managers has acted illegally in an attempt to circumvent the cost benefit limitations of the statute.

On appeal, the watershed district contends the decision of the Board is contrary to case law and the statutory provisions under which Holasek appealed. The district argues that Holasek may appeal only the pro-rata share of assessments levied on his property, and he has no authority to appeal benefits or costs assessed against the property of others in which he has no interest. Holasek, on the other hand, contends that he was not required to notify other property owners in the Ditch 58 system because he is appealing the entire assessment as being illegal; he is not contesting anybody's specific assessment.

The decision of the Board was based on its conclusion that the 1987 assessment was part of an ongoing practice of dealing with repairs and petitions on a bit-by-bit basis, and was therefore invalid. Because Holasek was not challenging the assessments or benefits of any property, but was instead challenging the validity of the entire assessment, there does not appear to be any reason to require him to serve notice of appeal on every property owner in the Ditch 58 watershed area.

■ 3. It is impermissible for a watershed district, in ordering ditch repairs, to attempt to evade the cost limitations in Minn.Stat. § 106A.715 (1988) by repairing part of a ditch and subsequently repairing another part of the same ditch which required repair at the time the first repair was made. *Petitions of Dudek*, 244 Minn. 532, 539, 70 N.W.2d 329, 333 (1955). The Board's decision in this case was based on a determination that the watershed district was using the 1987 assessment to make repairs that should have been included in the $180,000 repair job.

The watershed district contends *Dudek* is inapplicable because *Dudek* dealt with repairs following a petition pursuant to what is now Minn.Stat. § 106A.715, whereas the current case involves an assessment for the Ditch 58 repair and maintenance fund established under Minn.Stat. § 106A.705. *Dudek* did recognize this distinction. *Id.* at 534, 70 N.W.2d at 332.

We find no reason the *Dudek* analysis should not apply to this case. If it is impermissible to proceed with petitioned repairs on a bit-by-bit basis, it is equally impermissible to use the repair and maintenance fund to pay the costs of a petitioned repair to avoid the cost/benefit limitations of Minn.Stat. § 106A.341, subd. 1(1) (1988) (if cost of petitioned repair exceeds benefits, petition must be dismissed).

The issue comes down to whether there is sufficient evidence to support the Board's conclusion that the 1987 assessment was being used to make repairs that should have been included in the $180,000 repair. The parties agree the time for appeal has long since run on the earlier assessments for the repair and maintenance fund. The first piece of evidence is that the legal and viewers' expenses for the $180,000 repair came from the repair and maintenance fund. However, there was no evidence that the 1987 assessment will be or has been used for this purpose.

The Board also found there were repair petitions pending for the branches and laterals the 1987 assessment is being used to clean. These petitions were pending as of January 28, 1986, approximately 22 months after the $180,000 repair was ordered. There is no evidence these petitions were pending when the $180,000 repair was ordered; in fact, the petitions were not introduced into evidence.

There was no other evidence to support the Board's conclusion that the 1987 assessment was "part of an on-going practice of dealing with repairs and petitions on a bit-by-bit basis." Although the watershed district may have used the earlier assessments for this purpose, there is no evidence the funds collected under the 1987 assessment are being so used.

DECISION

The Board had subject matter jurisdiction, and Holasek could challenge the legality of the assessment without notifying all the other property owners. However, the Board's ultimate conclusion is not supported by the evidence.

AFFIRMED IN PART AND REVERSED IN PART.