DRAINAGE: REPAIRS: LIMITATION UPON COST: The limitation contained in Minn. Stat. § 103E.715, subd. 4(a) (1996) on cost of repairs made pursuant to a repair petition does not apply to routine maintenance and repairs made by a drainage authority pursuant to Minn. Stat. § 103E.705 (1996).

602-J

July 10, 1997

Elroy Hanson
Wambach & Hanson Law Office
210 South Main Street
P.O. Box 340
Mahnomen, Minnesota 56557

Dear Mr. Hanson:

In your letter to the Attorney General you present substantially the following:

## FACTS

An established drainage system has five miles of open ditch in the drainage system. The total benefits determined many years ago in the original drainage system proceeding were $25,000.00. The drainage system is now in need of repairs exceeding $25,000.00.

You then ask substantially the following:

## QUESTION

Does the limitation contained in Minn. Stat. § 103E.715, subd. 4(a) (1996) on cost of repairs under a repair petition apply to routine maintenance and repairs made by a drainage authority pursuant to Minn. Stat. § 103E.705 (1996)?

## OPINION

The limitation on cost of repairs contained in Minn. Stat. § 103E.715, subd. 4(a) (1996) does not apply to routine maintenance and repairs made under Minn. Stat. § 103E.705 (1996). Minn. Stat. § 103E.715 (formerly Minn. Stat. § 106.471, subd. 4) governs procedures for repairs to a drainage system made pursuant to a petition filed by an individual or an entity interested in or affected by a drainage system. Under the petition procedure, a drainage authority shall make findings and order a repair if "the drainage authority determines that the drainage system is in

need of repair so that it no longer serves its original purpose and **the cost of repair will not exceed the total benefits determined in the original drainage system proceeding.**" Minn. Stat. § 103E.715, subd. 4(a)(2) (emphasis added).

In contrast, Minn. Stat. § 103E.705 (formerly Minn. Stat. § 106.471, subd. 2) permits a drainage authority to make routine maintenance and repairs to a drainage system without a petition proceeding. The extent to which a drainage authority may make routine maintenance and repairs is limited by the language of the statute itself, which states, in part:

> In one calendar year the drainage authority may not levy an assessment for repairs or maintenance on one drainage system for more than 20 percent of the benefits of the drainage system, $1,000 per mile of open ditch in the ditch system, or $50,000, whichever is greater, except for a repair made after a disaster as provided under subdivision 7 or under the petition procedure.

Minn. Stat. § 103E.705, subd. 6. Thus, on the face of the statute, a drainage authority may, at minimum, make routine repairs to a drainage system totaling up to $50,000 in one calendar year. The drainage authority may exceed the $50,000 repair limit in one calendar year if one or more of the following conditions exist:

(a)     20% of the benefits of the drainage system is an amount exceeding $50,000; or

(b)     the drainage system contains more than 50 miles of open ditch; or

(c)     the repair is made after a disaster, pursuant to Minn. Stat. § 103E.705, subd. 7; or

(d)     the petition procedure is utilized.

The language of Minn. Stat. § 103E.705 is unambiguous. "When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law

shall not be disregarded under the pretext of pursuing the spirit." Minn. Stat. § 645.16 (1996).

In Hagen v. Martin County, 253 Minn. 367, 370, 91 N.W. 2d 657, 660, (1958), the Minnesota

Supreme Court proclaimed that "[d]rainage proceedings in this state are purely statutory and

their validity depends upon a strict compliance with the provisions of the statute by which they

are regulated and controlled." Thus, given the clear language of Minn. Stat. § 103E.705, the

limitation on cost of repairs made pursuant to a petition under Minn. Stat. § 103E.715 does not

apply to routine maintenance and repairs made by a drainage authority under Minn. Stat. §

103E.705. [1]

Furthermore, Minnesota courts have recognized the distinction between repairs made

pursuant to a petition and routine maintenance and repairs made by a drainage authority. In

Petitions of Dudek, 244 Minn. 532, 70 N.W.2d 329 (1955), the Minnesota Supreme Court stated:

> [A]n examination of the statutory history of the drainage ditch repair provisions
> clearly indicates that the proceedings pursuant to a petition under [§ 103E.715]
> and repairs resulting from a determination of the [drainage authority] from the
> annual report under [§ 103E.705] should not be subject to the same limitations.

244 Minn. at 536; 70 N.W. at 332. The Dudek court then looked at the history of the two

provisions, noting that authority to make routine repairs was granted to drainage authorities in

1927 while, "[i]n contrast, it was not until L. 1947, c. 143, § 47, which is the basis for [§

---

[1] Of course, as with all special assessment proceedings, a party could challenge an assessment on constitutional grounds if it could show that the costs assessed to a property would exceed the benefits the property would receive as a result of a proposed repair project. See, e.g., Oxford v. City of Maplewood, 358 N.W.2d 106, 108 (Minn. Ct. App. 1994) ("A special assessment may not exceed the benefit the property receives from the improvement. If it does, the result is a taking of property in violation of the fourteenth amendment.") (citation omitted).

103E.715], that any blanket limitations were placed upon the cost of repairs which could be ordered in a proceeding pursuant to petition." Id. Thus, the blanket limitation contained in the statute governing petition procedures has not historically applied to the statutory provisions relating to routine maintenance and repairs.

Finally, it should be noted that the Dudek court recognized that a blanket limitation on cost of repairs like that contained in Minn. Stat. § 103E.715 may prove to be impracticable. The court recommended a legislative solution, stating:

> While a blanket limitation on the cost of repairs which can be made to a ditch may prove to be impracticable in instances where the depreciated value of the dollar has raised the cost of necessary repairs in excess of benefits assessed on the value of the dollar some 40 years ago, this is a problem that must be met by legislative enactment rather than by a distortion of the existing statutes.

244 Minn. at 538 n.7, 70 N.W.2d at 333 n.6.

As suggested by the court, the Minnesota Legislature has met this problem by periodically amending the routine maintenance and repair statute to increase the amount a drainage authority may spend in one calendar year for such repairs. For example, as enacted in 1927, the statute permitted a drainage authority to make routine repairs when the amount of repairs did not exceed $500. See L. 1927, c. 51, § 3. By 1949, the amount was raised to $1,000, but the authority could not spend in one year more than 10% of the original cost of the system. Minn. Stat. 106.471, subd. 2(b) (1949). In 1957, the statute was amended to permit the authority to spend on routine repairs in one year up to 20% of the original cost of construction, not to exceed $2,000. Minn. Stat. 106.471, subd. 2(b) (1957).

The statute was again amended in 1965. The statute read in part: "In one calendar year the board shall not spend or contract to be spent for repairs or maintenance on one ditch system a sum greater than 20 percent of the cost of construction thereof in that county, or the sum of $5,000 if the said 20 percent is less than $5,000, except as provided in subdivision 4." See 1965 Minn. Laws, ch. 257, sec. 1. In 1969, the statute was amended to increase the limit to $10,000 (see Minn. Stat. § 106.471, subd. 2 (1969)); today it stands at $50,000. Minn. Stat. § 103E.705, subd. 2 (1996). These periodic amendments indicate that the Legislature has recognized the effect of inflation upon the routine repair statute, and has responded by raising the amount which a drainage authority could spend in one calendar year for routine maintenance and repairs.

In writing this opinion, we are not unmindful of the opinions rendered by this office on November 27, 1947 and March 26, 1951 regarding Minn. Stat. § 106.471 (the predecessor to Minn. Stat. §§ 103E.705 and 103E.715). An examination of those opinions reveals that they are consistent with this opinion. At the time those opinions were issued, the language of Minn. Stat. § 106.471, subd. 2, regarding routine repairs expressly limited the amount expended on repairs made without a petition in one year to 10% of the cost of construction of the drainage system. Repairs made pursuant to a petition under Minn. Stat. § 106.471, subd. 4 could not be made "if the cost thereof exceed[ed] the benefits theretofore determined in the ditch proceeding."

Thus, both routine repairs and petitioned repairs were expressly limited by statutory language linking such repairs to the costs or benefits of a ditch system as determined in the original ditch proceedings. That is no longer the case. As described above, the Legislature

Mr. Elroy Hanson
Page 6

amended the routine repair statute on numerous occasions. Following the 1965 changes, the

language of Minn. Stat. § 106.471, subd. 2 no longer limited the cost of a routine repair to the

benefits as originally determined.

Very truly yours,

HUBERT H. HUMPHREY, III
Attorney General

CRAIG L. ENGWALL
Assistant Attorney General